THE STATE OF OHIO, APPELLEE, *v.*
BAKST, APPELLANT.

(No. C-850316—Decided
February 19, 1986.)

Richard A. Castellini, city solicitor, Paul J. Gorman, city prosecutor, and Rodney Prince, for appellee.

O'Connor, Acciani & Assoc. and Michael P. O'Connor, for appellant.

BLACK, J. Defendant-appellant Sanford Bakst ("defendant") was convicted in a jury trial of operating a vehicle while under the influence of alcohol, in violation of R.C. 4511.19(A)(1). On appeal, he contends in six assignments of error that the trial court erred in the following actions: (1) the overruling of his motion to suppress evidence, because the arresting officer had no probable cause; (2) the admission of "highly prejudicial and totally irrelevant statements" that he made to the arresting officers; (3) the admission of evidence of his refusal to take a urine test for the concentration of alcohol therein after he had taken a breath test (claiming three grounds of error); (4) the overruling of his motion for acquittal under Crim. R. 29 (sufficiency of evidence); (5) entering a judgment against the manifest weight of the evidence; and (6) the refusal to .

give a requested jury instruction about considering the fact that the intoxilyzer test disclosed a concentration of less than ten hundredths (.10) of one gram by weight of alcohol per two hundred ten liters of his breath. We overrule all six assignments of error.

We will consider the first assignment of error, in which defendant asserts the court erred in refusing to suppress evidence of his arrest and all subsequent evidence flowing from it, independently of the other five assignments, which raise claims of errors committed during the trial.

I

At the hearing on the motion to suppress, Cincinnati Police Officer Charles Konnett testified that he received a "radio run" about an accident on Columbia Parkway and found two automobiles parked in the center lane, which under the circumstances was the only safe place to stop on that parkway. One was a red Ford Escort parked about thirty feet in front of a blue car; both were facing inbound (west). The red Ford had a damaged right front wheel and fender. Defendant Bakst admitted that he was the driver of that vehicle and that it had hit the concrete retaining wall on the right side of the inbound lanes. The blue automobile belonged to an unnamed passerby who had stopped to assist defendant. The officer said the defendant was "obnoxious" and "hard to handle"; he would not answer questions. He had difficulty walking and kept staggering into the eastbound lane of traffic. He mistakenly kept pointing to the blue car as his, until the passerby drove it away. The officer smelled an odor of alcohol about the defendant's person.

The officer had probable cause to arrest the defendant for driving under the influence of alcohol. This was not a case of an uncomplicated speed violation, as in *State* v. *Taylor* (1981), 3 Ohio App. 3d 197, 3 OBR 224, 444 N.E.2d 481; it was not a case of no observed traffic violation, as in *State* v. *Walters* (Mar. 27, 1985), Hamilton App. No. C-840413, unreported. The evidence summarized above provided ample proof of two traffic violations (improper change of course, and driving under the influence). *State* v. *Denlinger* (Feb. 2, 1983), Hamilton App. No. C-820252, unreported. The first assignment of error is without merit.

II

At the jury trial on the charge of operating a vehicle under the influence of alcohol, the evidence was more extensive. There was no snow, ice or water on the parkway at about 11:30 p.m. on December 8, 1984, when Officer Konnett received the "radio run." Defendant admitted it was his vehicle alone that was involved in the accident, but the officer could not get any further accurate information or cooperation from the defendant.

A second police officer was called to the scene; this officer escorted defendant to a police station after conferring briefly with Officer Konnett and later conducted the intoxilyzer test.

When defendant realized he would be charged with a traffic violation, he became hostile and threatened to get the officers' badges, claiming he made enough money to see "this whole thing washed down the river." He said he could "buy and sell" them both. He conceded he had been at a restaurant bar and had had "a drink and a half," but some of his other remarks were incomprehensible. His speech was slurred and his eyes were bloodshot. He could not recite the alphabet correctly because he omitted ten letters, and he did not follow a direction to count backwards from one hundred by tens (he counted by units). He failed psychomotor tests of his ability to maintain his balance, to walk a straight line and to touch his nose. In the opinion of both officers, he was under the influence of alcohol.

Defendant acceded to the standard

request to take an intoxilyzer test. The result indicated a concentration of thirty-four thousandths (.034) of one gram by weight of alcohol per two hundred ten liters of his breath. Defense counsel elicited from the testing officer the information that the legal limit in Ohio is ten hundredths (.10) of one gram under another provision of "the DUI statute," and that the defendant's intoxilyzer result was below that figure. (See R.C. 4511.19[A][3].)

At a later moment in the police station, the defendant was asked to submit to a urine test. The officers thought his condition might have been exacerbated by a drug of abuse that would not be detected by the intoxilyzer but would show up in a urine analysis. Defendant refused to take the urine test. Testimony about this refusal was admitted over defendant's objection to any and all evidence about a second test. Another objection was overruled when

Officer Konnett was asked whether he (or his fellow officer) had asked the defendant why he refused. The officer said that the defendant made no response.[1]

At the end of the trial, defendant made a written request, pursuant to Crim. R. 30, that the court instruct the jury specifically that in determining guilt or innocence, it could consider the fact that the concentration was less than the legal limit. This was refused by the court. We will set forth the specific instruction in our discussion of the sixth assignment of error in Part VII below.

### III

In the second assignment of error, defendant contends the court erred when it admitted in evidence his remarks threatening the officers, saying (among other things) he could "buy and sell" them and would "wash" the incident down the river. He contends that

---

[1] The transcript of proceedings contains the following, at T.p. 28 and 29:

"Q. [Prosecutor] You were also present when he was asked to take the intoxilyzer examination?

"A. [Officer Konnett] Yes, sir, I was.

"Q. And did you have occasion to see the result of that examination?

"A. Yes, sir, I did.

"Q. What was the result, Officer?

"A. I believe the intoxilyzer read .03.

"Q. Point zero three?

"A. I believe. I haven't got the papers with me.

"Q. Officer, were you — While in your presence, was Sanford Bakst asked to submit to a urine test?

"MR. O'CONNOR: Objection. Approach the Bench.

"(The following was had out of the hearing of the jury.)

"MR. O'CONNOR: Judge, I believe the evidence is going to show at this time he was asked to take the urine test subsequent to the * * * breathalyzer, that the evidence will be that he refused to submit to such. At this point, we're objecting to any and all testimony regarding the refusal.

"He was asked to take a BAC and submitted to a BAC. Later they asked to take blood of a different variety, that being urine.

"We're making A [sic] 4511.19 where there's more than the request for additional test, the implied consent basically say[s] once a person is withdrawn of bodily substances of which the contents is [sic] alcohol, once a person has, in fact, complied with the request, he has done all that's required. He passed the original test. It infringes on that.

"THE COURT: Well, the objection will be overruled.

"Q. Officer, was Mr. Bakst in your presence when he was asked to take a urine test?

"A. Yes.

"Q. Did he take that test?

"A. No, he did not.

"Q. Was he asked why?

"MR. O'CONNOR: Objection.

"THE COURT: Overruled.

"A. We asked him why he wouldn't but there was no response. He didn't say anything.

"MR. O'CONNOR: Objection, again.

"THE COURT: Overruled."

this was "totally irrelevant" and "highly prejudicial." We disagree.

The remarks were obviously relevant to the central question of whether the defendant was then under the influence of alcohol.

Even though relevant, evidence must be excluded under Evid. R. 403(A) if its probative value is outweighed by the danger of unfair prejudice, *inter alia.* We hold that evidence about an accused's own actions or language, so long as it is relevant to the essential elements of the offense, cannot be "unfairly prejudicial." The evidence about this defendant's remarks was harmful to his defense, obviously, but it was not "unfair" to admit it.

*State* v. *Lewis* (Nov. 14, 1979), Hamilton App. No. C-780804, unreported, is inapposite because that case dealt with the unfair cumulative effect of repetitive colored pictures of a gruesome murder. In the instant case, the evidence was neither cumulative nor repetitive. The second assignment of error has no merit.

## IV

The third assignment of error advances the claim that the court erred when it admitted evidence about defendant's refusal to submit to the second chemical (urine analysis) test, and he presents three "issues" thereunder.[2] For the reasons that follow, we find no merit in any of the three, and we overrule the third assignment of error.

The first argument ("issue") is that once a person who is arrested under R.C. 4511.19 has submitted to one chemical test of alcoholic concentration, the police are prohibited by the statute from requiring that he submit to any other test. We do not agree with this statutory interpretation. Reading R.C. 4511.19 and 4511.191 *in pari materia,* we conclude that the implied consent to be tested for the presence of alcohol or drugs of abuse in a person's blood, breath or urine is a consent to "a chemical test *or tests*" (emphasis added) and that if the officers have probable cause to arrest for any violation of R.C. 4511.19, they are permitted by the statutes to conduct more than one test.[3]

The second argument is that the defendant's right against self-incrimination was violated when Officer Konnett was allowed to testify that the defendant remained silent after he was asked why he would not submit to the urine test. This argument has no merit under *South Dakota* v. *Neville* (1983), 459 U.S. 553, and *Westerville* v. *Cunningham* (1968), 15 Ohio St. 2d 121, 122, 44 O.O.2d 119, 239 N.E.2d 40, 41. Both cases hold that an accused's right against self-incrimination is not violated by the admission of evidence that he refused to take a chemical test for intoxication or by counsel's comments thereon. In *Neville,* the United States Supreme Court concluded that under an "implied consent" law that gives the accused a choice of accepting or refusing a chemical test, the accused is not "compelled" to refuse, and that evidence of that choice is not protected by the Fifth Amendment. Furthermore, in footnote 10, the Supreme Court stated that the prohibition against comments on defen-

---

[2] Two constitutional issues were not raised in this appeal. Defendant does not contend that he was interrogated in custody without being given the *Miranda* rights, or that the request for the second test (urine) violated his due process rights.

[3] R.C. 4511.191(A) states in part: "The law enforcement agency by which such offi-

cer is employed shall designate which of the tests shall be administered." The question whether the Cincinnati Police Division "designated" the urine test under the circumstances disclosed by the record was not raised by defendant in the trial court, and we do not reach or decide that question in this appeal.

dant's refusal to take the stand (or to remain silent), as set forth in *Griffin* v. *California* (1965), 380 U.S. 609, 32 O.O. 2d 437, is not applicable to a person suspected of drunk driving, because no person has a constitutional right to refuse to take a blood-alcohol test. In short, the Fifth Amendment does not prohibit the admission of a defendant's refusal to take the chemical test or tests, or the admission of his silence when asked why, or comments on either.

Defendant's third argument is that the court should not have allowed evidence of his refusal to take the urine test because there was "absolutely no evidence presented by the State of Ohio regarding an accused [*sic*] being under the influence of any drug of abuse." We are not persuaded. The Uniform Traffic Ticket accused defendant of operating a motor vehicle "while under the influence of alcohol and/or drugs of abuse," thus putting defendant on notice that he was charged with having used drugs of abuse as well as alcohol. Defendant's aberrant conduct on the night of his arrest was such as to raise questions in a reasonable mind about what caused him to behave this way. We find nothing prejudicial in allowing the officers to testify that the reason they wanted to have the results of a urine analysis was that this would disclose the presence of drugs of abuse whereas an intoxilyzer test would not.

We note in passing that the court's instructions to the jury did not mention drugs of abuse in any manner and that the verdict found defendant guilty of operating the vehicle "while under the influence of alcohol" only. It would appear the court felt that any inferences about the use or influence of drugs of abuse were insufficient to present that possibility to the jury. We do not quarrel with that conclusion in this case.

## V

In the fourth assignment of error, defendant asserts that he should have been acquitted by the court under Crim. R. 29(A) because the evidence was insufficient as a matter of law to support his conviction, the reason being that since the intoxilyzer test revealed a concentration of only thirty-four thousandths (.034) of one gram by weight of alcohol in his breath, he was completely exonerated of the crime for which he was charged. We do not agree.

Defendant was charged with violation of R.C. 4511.19(A)(1), or specifically with operating a vehicle while under the influence of alcohol. He was not charged with having a prohibited concentration of alcohol in his breath, under R.C. 4511.19(A)(3), and it was not necessary for the state to prove any particular degree of concentration. All that was necessary to sustain the verdict, as the jury was clearly instructed by the court, see *infra* at footnote 5, was proof that he had consumed some alcohol (which he admitted) in a quantity adversely and appreciably impairing his actions or mental processes and depriving him of that clearness of intellect and control of himself which he would otherwise have had. The amount of alcohol concentration in his body was not the question; the effect of whatever alcohol concentration may have been present was the question.

The evidence summarized in Part II above was amply sufficient to support the conviction.

## VI

The fifth assignment of error raises the issue whether the guilty verdict was against the manifest weight of the evidence. After reviewing the entire record, weighing the evidence and all reasonable inferences therefrom, and considering the credibility of the witnesses, we conclude that in resolving the issues in the instant trial, the jury did not create a manifest miscarriage of justice. *State* v. *Nelson* (Nov. 14, 1984), Hamilton App. No. C-840162, unreported. See *State* v. *Martin* (1983), 20 Ohio App. 3d

172, 20 OBR 215, 485 N.E. 2d 717, paragraph three of the syllabus.

## VII

In the sixth assignment of error, defendant contends that the trial court erred when it refused to give the following instruction, duly requested in writing under Crim. R. 30:

"If there was at a time bodily substance was withdrawn a concentration of less than ten hundredths of one gram by weight of alcohol or [sic] two hundred ten liters of his breath such fact may be considered with other competent evidence in determining the guilt or innocence of the Defendant."

We note that the language of this instruction comes substantially directly from the fourth paragraph of R.C. 4511.19(B), as effective March 16, 1983.[4]

We are not persuaded that the refusal of the court to give the instruction was erroneous, for three reasons that are intertwined and cumulative. First, the statute does not require it. The statute merely says that if the tested concentration is less than those specified in Division (A), this fact *may* be considered in determining guilt or innocence. The jury in the instant case was not kept from such consideration, because it had evidence before it that the defendant's alcohol concentration was less than the "legal limit" of ten hundredths (.10) of one gram by weight of alcohol in his breath. The statute does not require that any specific instruction shall be given to the jury.

Second, under the present language of R.C. 4511.19(A)(1), there is no presumption of alcohol influence that arises from having a designated concentration of alcohol in one's body. The amount of alcohol concentration discovered by testing, whether large or small, is one, but only one, fact to be considered in deciding whether an accused was in fact under the influence. The three other subdivisions of R.C. 4511.19(A) set forth three distinctly separate offenses, *State v. Ryan* (1984), 17 Ohio App. 3d 150, 17 OBR 250, 478 N.E. 2d 257; *State v. Coppel* (Nov. 14, 1984), Hamilton App. Nos. C-840138 to -840141, unreported, and an accused may not be found guilty under any of those subdivisions unless the state proves beyond a reasonable doubt the designated alcohol concentration in blood, breath or urine. For a conviction of operating "under the influence," however, proof of a lesser concentration is relevant but not determinative.

Third, the instruction given by the trial court to the jury was accurate and complete, and in no way misleading. The jury was told that in deciding whether the defendant was guilty of operating a vehicle while under the influence of alcohol, it must consider all the evidence (which included *sub silentio* the result of the intoxilyzer test) and determine whether the defendant had consumed "some alcohol whether mild or potent in such a quantity whether great or small that it adversely affected [and] appreciably impaired the defendant's actions[,] reactions or mental processes under the circumstances then existing and deprived him of a clearness of the intellect and control of himself which he

---

[4] The fourth paragraph of R.C. 4511.19 (B) reads in full:

"If there was at the time bodily substance was withdrawn a concentration of less than ten-hundredths of one per cent by weight of alcohol in the defendant's blood, less than ten-hundredths of one gram by weight of alcohol per two hundred ten liters of his breath, or less than fourteen-hundredths of one gram by weight of alcohol per one hundred milliliters of his urine, such fact may be considered with other competent evidence in determining the guilt or innocence of the defendant."

would have otherwise possessed."[5] Without analyzing in detail those of the court's instructions that were addressed to the proof needed for a guilty verdict, being those set forth in footnote 5, we conclude that the jury was fully and accurately informed and that the court made no error in its jury instructions.

## VIII

Finding no error, we affirm the judgment of the trial court.

*Judgment affirmed.*

DOAN and HILDEBRANDT, JJ., concur.

---

[5] The pertinent parts of the court's jury instructions were:

"You've heard me talk about evidence. Evidence is all the testimony which was received from the witness stand.

"* * *

"There are two types of evidence, direct evidence and circumstantial evidence.* * *

"* * *

"In this case the defendant is charged with operating a motor vehicle while under the influence of alcohol in violation of section 4511.19 A1. Now, the defendant, Mr. Bakst, is charged with the A1 section of this offense. Before you can find the defendant guilty, you must find, beyond a reasonable doubt, that on or about December 8, 1984, in Cincinnati, Hamilton County, Ohio, the defendant while operating a vehicle was under the influence of alcohol.

"Now, there are certain words which we have used. To operate.* * *

"* * *

"Alcohol as used in this section means ethel [*sic*] alcohol whether refined or diluted with water or not. Under the influence of alcohol means that the defendant consumed some alcohol whether mild or potent in such a quantity whether great or small that it adversely affected an [*sic*] appreciably impaired the defendant's actions[,] reactions or mental processes under the circumstances then existing and deprived him of a clearness of the intellect and control of himself which he would have otherwise possessed.

"The question is [not] how much alcohol would affect the ordinary person. The question is what affect [*sic*] did any alcohol consumed by the defendant have on him at the time and place involved. If the consumption of alcohol so affected the nervous system, brain, or muscles of the defendant as to impair and appreciably lower his ability to operate the vehicle, then the defendant was under the influence of alcohol.

"The word appreciable as I have just used it — something is appreciable if it is noticable [*sic*] or perceptable [*sic*]. Appreciable is not to be confused in this sense with the word substantial.

"If you find that the State proved beyond a reasonable doubt all the essential elements of the offense of driving under the influence of alcohol in violation of 4511.19 A1, then your verdict must be guilty.

"If you find that the State failed to prove beyond a reasonable doubt any one of the essential elements of the offense of driving under the influence of alcohol in violation of 4511.19 A1, then your verdict must be not guilty."