OPINION
Appellant, William L. Sherman, appeals his conviction and sentence by the Portage County Court of Common Pleas arising from his involvement in a motor vehicle accident.
On or about April 7, 1997, appellant, his girlfriend, Lisa Sharp ("Sharp"), Susie Polito ("Polito"), and Andy Ramos ("Ramos") were involved in a one car motor vehicle accident while appellant was driving, which caused the death of Polito and inflicted severe and permanent injury to Ramos. Appellant's vehicle went off the side of the road in a 35 m.p.h. zone, crushed a fence, and cut a telephone pole in half. As a result of the accident, Ramos remained unconscious in the hospital for over five weeks and suffered a severe brain injury, resulting in a permanent inability for him to walk and talk. Sharp was thrown from the vehicle and suffered an injury to her leg. Finally, appellant only suffered a small cut to one of his ears.
On August 19, 1997, appellant filed a waiver for a jury trial. Consequently, a bench trial was held in this matter from August 19 through August 21, 1997. At trial, evidence was presented by the appellee, the State of Ohio, that the hospital took a sample of appellant's blood within two hours of the accident, which showed a blood alcohol content ("BAC") of .044 percent. Additionally, appellee presented evidence that marks on the road demonstrated that appellant drove over the center line just before the accident, and could have had a BAC of .088 percent at the time of the accident. However, the trial judge expressly stated that he did not take into account the testimony indicating that appellant's BAC could have been .088 percent.
Also, Officer Edith Schultz ("Officer Schultz"), a police officer employed by the city of Stow, testified that she observed a strong odor of alcohol on appellant's breath. Officer Joseph Helper ("Officer Helper"), a police officer employed by the city of Stow, testified that he noticed that appellant's eyes were glossy and bloodshot. Finally, Trooper Thomas Halligan ("Trooper Halligan"), an eleven and one-half year employee of the Ohio State Highway Patrol, took skid mark measurements at the scene of the accident and testified that appellant's vehicle was traveling at a speed of 94 m.p.h.
Appellant's girlfriend, Sharp, provided further evidence during the trial in this matter by testifying that appellant had been smoking marijuana with her shortly before the accident. However, appellant produced a toxicology report from the Ohio State Highway Patrol which showed that his drug screen was "Negative." The blood utilized for that test was collected on April 7, 1997, at 2:16 a.m., which was the date of the accident. Therefore, other than Sharp's testimony, there was no evidence indicating that appellant had, in fact, inhaled marijuana.
Procedurally, the record reveals that at the close of appellee's presentation of the evidence, appellant made a Crim.R. 29 motion for acquittal. The trial court subsequently overruled appellant's motion. The record further reveals that Ellen DiRienzo ("DiRienzo"), who is a friend of the family, and James Madden ("Madden"), a forensic engineer, testified in behalf of appellant. DiRienzo testified that appellant was a friendly and helpful individual. Madden testified that in his calculations, appellant's automobile was traveling at the approximate rate of 65 m.p.h. just before the accident.
On August 25, 1997, the trial court entered judgment, finding appellant guilty on one count of aggravated vehicular homicide, R.C. 2903.06, a felony of the third degree; one count of involuntary manslaughter, R.C. 2903.04, a felony of the third degree; and one count of aggravated vehicular assault, R.C.2903.08(A), (B), (C), a felony of the fourth degree. The court further found appellant guilty on three specifications of driving under the influence, in violation of R.C. 4511.19, but failed to specify which subsection was applicable.
On January 7, 1998, the court sentenced appellant to a definite term of incarceration of two years for the offense of aggravated vehicular homicide, R.C. 2903.06, and a definite term of imprisonment of twelve months for the offense of aggravated vehicular assault, R.C. 2903.08(A), (B), (C). In addition, the court held that each term of incarceration was to be served consecutively. Finally, the court held that appellant be assessed the costs of the proceedings, suspended his operator's license for life, and credited his sentence with two days for confinement served in connection with this case. For sentencing purposes, appellant's conviction on the one count of involuntary manslaughter merged with his conviction for aggravated vehicular homicide.
On February 4, 1998, appellant timely filed this notice of appeal, and now asserts the following assignments of error:
 "[1.] The [appellant's] trial counsel was ineffective due to a failure to adequately cross examine [sic] key witnesses of the State and failure to present a meaningful defense in that he did not present a viable available alternative to the cause of the accident, did not address the subject of recklessness versus negligence and failed to object to a most critical question in the case.
 "[2.] The [t]rial [c]ourt erred as a matter of law by failure [sic] to grant defense counsel's Crim.R. 29 Motion for Acquittal and the [c]ourt's ultimate finding of guilt on all charges and specification that the defendant was under the influence of alcohol and/or a drug of abuse [and] was based on insufficient evidence and/or was against the manifest weight of [the] evidence as a matter of law."
In the first assignment of error, appellant contends that his counsel was ineffective because his counsel: (1) claimed, in the opening statement, that the actual cause of the accident resulted from appellant traveling at 94 m.p.h., thus undermining the adversarial process; (2) presented only one expert witness at trial; (3) claimed, only in his closing argument, that the accident could have occurred due to a tire blowout; and (4) failed to adequately cross-examine appellee's expert witness concerning testimony that appellant could have had a BAC of .088 percent, by asking merely five questions of that expert.
The case of Strickland v. Washington (1984), 466 U.S. 668, provides the framework for determining whether a defendant was deprived of effective assistance of counsel. In Strickland, the Supreme Court stated the following:
 "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." Id. at 687.
Furthermore, in State v. Bradley (1989), 42 Ohio St. 136, 142, quoting Strickland v. Washington (1984), 466 U.S. 668, the Supreme Court of Ohio held:
 "* * * As for ineffectiveness, `(w)hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness.' Strickland, supra, at 687-688. The court recognized that there are `(* * *) countless ways to provide effective assistance in any given case. (* * *)' Id. at 689. Therefore, the court stated that `(j)udicial scrutiny of counsel's performance must be highly deferential. (* * *).' Id. In addition, `(b)ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. (* * *).' Id. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance."
"To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Id. at paragraph three of the syllabus. Moreover, in Ohio, a licensed attorney is strongly presumed competent. State v. Smith (1985),17 Ohio St.3d 98, 100. Additionally, "[d]ebatable trial tactics generally do not constitute a deprivation of effective counsel."State v. Phillips (1995), 74 Ohio St.3d 72, 85. Finally, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 446 U.S. at 686.
In the instant matter, appellant has failed to demonstrate that his counsel's performance was so deficient that he was not functioning as the type of counsel guaranteed by the Sixth Amendment. Thus, appellant has failed to satisfy the first prong of the Strickland test. The first prong is not satisfied because the record reveals that his attorney's decision to state that the accident resulted from traveling in excess of the speed limit was an attempt to undermine appellee's forthcoming arguments that the accident resulted directly from appellant's driving under the influence. In evaluating his counsel's opening statements with due deference, which we are required to do pursuant to Strickland
and Bradley, such statement can be viewed as a trial tactic utilized for the purpose of providing alternative reasons for the accident or of creating doubt that the accident resulted from driving intoxicated. At most, such conduct constitutes a debatable trial tactic, which cannot amount to a deprivation of effective counsel pursuant to Phillips.
The fact that appellant's counsel only presented one expert witness at trial and only mentioned in his closing argument that the accident could have occurred due to a tire blowout also constitutes, at most, debatable trial tactics. Again, pursuant to Phillips, these possibly debatable trial tactics do not rise to the level of demonstrating an ineffective assistance of counsel.
Finally, even assuming, arguendo, that appellant's counsel inadequately cross-examined appellee's expert witness on the issue of appellant having a possible BAC of .088 percent at the time of the accident, the trial judge stated on the record that such evidence was disregarded by him in arriving at the verdict. Therefore, appellant is unable to show that this "error" resulted in a reasonable probability that the trial would have been different had it not been committed, as required by Bradley. Thus, appellant's first assignment of error is not well-taken.
In the second assignment of error, appellant contends that the trial court erred in convicting appellant because the evidence was insufficient and against the manifest weight of the evidence.
In the case of State v. Schlee (Dec. 23, 1994), Lake App. No. 93-L-082, unreported, 10-11, this court held the following:
 "`Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while `manifest weight' contests the believability of the evidence presented.
 "`"(* * *) (T)he test (for sufficiency of the evidence) is whether after viewing the probative evidence and the inference[s] drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence. * * *"'
 "In other words, the standard to be applied on a question concerning sufficiency is: when viewing the evidence `in a light most favorable to the prosecution,' * * * `(a) reviewing court (should) not reverse a jury verdict where there is substantial evidence upon which the jury could reasonably conclude that all of the elements of an offense have been proven beyond a reasonable doubt.' State v. Eley (1978), 56 Ohio St.2d 169, syllabus.
 "On the other hand, `manifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.
 "`In determining whether the verdict was against the manifest weight of the evidence, "(* * *) (t)he court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (* * *)"'* * *" (Citations omitted and Emphasis sic.)
For purposes of clarity, this court will first address appellant's sufficiency arguments in regard to his convictions for aggravated vehicular homicide, involuntary manslaughter, and aggravated vehicular assault, and driving under the influence of alcohol.
Aggravated vehicular homicide is defined in R.C. 2903.06 as "recklessly" causing the death of another while operating a motor vehicle. The term "recklessly" is defined in R.C. 2901.22(C) as occurring when, "with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature."
At trial, evidence was presented that appellant was the driver of an automobile that went off the road and crashed into a telephone pole; that Polito, a passenger in the vehicle, died as a result of the accident; that appellant was traveling 94 m.p.h. in a 35 m.p.h. zone; that appellant's vehicle traveled left of center before the accident; that appellant had been drinking shortly before operating the automobile; and hospital tests showed that appellant's BAC tested at .044 percent. This evidence, construed in a light most favorable to appellee, is sufficient to permit any rational trier of fact to conclude that appellant recklessly caused the death of Polito while operating a motor vehicle.
Next, involuntary manslaughter, as a felony of the third degree, is defined in R.C. 2903.04(B) as occurring when a person causes the death of another "as a proximate result of the offender's committing or attempting to commit a misdemeanor of the first, second, third or fourth degree or a minor misdemeanor."
As previously stated, evidence was presented that Polito died as a result of an accident in which she was a passenger in an automobile driven by appellant. In addition, appellee submitted evidence that appellant was traveling 94 m.p.h. in a 35 m.p.h. zone, a violation of R.C. 4511.21; that appellant's vehicle traveled left of center before the accident, a violation of R.C.4511.30; and that appellant had a BAC level of at least .044 percent, together with some evidence that he had been smoking marijuana, which could provide a basis for the trial court to conclude, as it did, that he was driving in violation of R.C.4511.19(A)(1) for specification purposes even though the toxicology drug screen was "Negative." Each of these three offenses constitutes a misdemeanor. Therefore, the evidence is sufficient for any rational trier of fact to conclude that appellant caused the death of Polito while committing a misdemeanor.
Aggravated vehicular assault is defined in R.C. 2903.08 as occurring when a person, "while operating or participating in the operation of a motor vehicle, * * * recklessly cause[s] serious physical harm to another person * * *." Appellee's evidence also indicated that Ramos was a passenger in appellant's vehicle at the time of the accident and suffered a severe brain injury resulting in five weeks of unconsciousness and the permanent inability to walk and talk. This fact, together with those facts previously discussed, is sufficient for any rational trier of fact to conclude that appellant committed the offense of aggravated vehicular assault.
Finally, R.C. 4511.19(A)(1) defines the offense of driving under the influence as occurring when a person operates any vehicle while "under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse." In order to be convicted for driving under the influence, "the prosecution need not establish a threshold level of alcohol concentration in the defendant's body. It must, however, prove that the defendant operated a vehicle when his faculties were appreciably impaired by the consumption of alcohol" by looking at the totality of the circumstances. State v. Lowman (1992), 82 Ohio App.3d 831, 836. In State v. Bakst (1986), 30 Ohio App.3d 141, 145, the appellant was convicted of driving under the influence, despite the fact that his BAC was .034 percent.
In our case, evidence was presented that a strong odor of alcohol emanated from appellant's breath, a police officer testified that his eyes were "glossy" and "bloodshot," hospital blood test results indicated that his BAC was .044 percent, and Sharp stated that appellant had been drinking prior to the accident. These facts are sufficient for the trier of fact to conclude that appellant was driving under the influence. Therefore, appellant's first claim is without merit.
In his second claim, appellant contends that the evidence was against the manifest weight of the evidence.
In State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus, the Supreme Court of Ohio stated, "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." Additionally, "[i]n reviewing a claim that a jury verdict was against the weight of the evidence, or that the evidence was insufficient, a reviewing court's duty is to review the record to determine whether there was sufficient evidence for the jury to find [the] defendant guilty beyond a reasonable doubt." State v. Brown (1988),38 Ohio St.3d 305, paragraph four of the syllabus.
As the trier of fact, the trial court was in the best position to determine the credibility of the evidence and assess the weight that should be given to the evidence presented. In our review of the record, we hold that the trial court has not abused its discretion in weighing the evidence. Accordingly, appellant's second claim is meritless. In addition, this court thus concludes that appellant's Crim.R. 29 motion for acquittal was properly overruled. Therefore, appellant's second assignment of error is not well-taken.
For the foregoing reasons, appellant's assignments of error are without merit and the judgment of the Portage County Court of Common Pleas is affirmed.
_______________________________
PRESIDING JUDGE DONALD R. FORD
NADER, J., O'NEILL, J., concur.