[Cite as *State v. Mattes*, 2017-Ohio-7666.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P. J. |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 16 CA 46 |
| ALAN MATTES | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:      Civil Appeal from the Municipal Court, Case
                              No. TRC1610689


JUDGMENT:                     Affirmed


DATE OF JUDGMENT ENTRY:       September 18, 2017


APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

DANIEL E. COGLEY                          DARREN L. MEADE
CITY of LANCASTER LAW DIRECTOR            PARKS AND MEADE, LLC
123 East Chestnut Street                  3010 Hayden Road
Lancaster, Ohio  43130                    Columbus, Ohio  43235

*Gwin, P.J.,*

**{¶1}** Appellant Alan Mattes appeals the denial of his appeal of an Administrative License Suspension (ALS) in the Fairfield County Municipal Court.  Appellee is the State of Ohio.

### Facts and procedural History

**{¶2}** On September 25, 2016, shortly before 1:00 a.m. Appellant Mattes was operating a 2014 Toyota in Violet Township, Fairfield County, when Trooper P.M. White of the Ohio State Highway Patrol stopped him.  The stop occurred at 12:53 a.m. T. at 14.

**{¶3}** As a result of said traffic stop, appellant was cited for a marked lanes violation (R.C. 4511.33) and arrested for OVI (R.C. 4511.19(A)(1)(a)).

**{¶4}** Following his arrest, appellant told Trooper White at the scene that he would provide a chemical sample to test for his alcohol level.  Appellant was transported to the Lancaster Highway Patrol Post where he was read and signed the BMV-2255 form.  Appellant was then taken to the room containing the BAC Datamaster equipment for a breath test.  After Trooper White had completed his calibrations, appellant blew into the machine, but the result was an "invalid sample."  T. at 12.  This result was obtained at 2:13 a.m.

**{¶5}** Trooper White, according to his subsequent testimony, was trained that the Datamaster had to be taken out of service if a second consecutive invalid sample occurred.  The trooper therefore decided not to offer appellant a second opportunity to submit to a breath test. Instead, Trooper White requested that appellant submit a urine sample.  However, when appellant failed to produce a sufficient sample, Trooper White

listed appellant on the BMV-2255 form as having "refused" chemical testing. This took place at 2:15 AM, just two minutes after the invalid breath sample result.

{¶6} On September 26, 2016, appellant filed an appeal to the Fairfield County Municipal Court of his administrative license suspension, with a request for an oral hearing.

{¶7} A hearing took place on October 17, 2016. Via a judgment entry issued on November 30, 2016, the trial court overruled appellant's appeal of the ALS. In pertinent part, the trial court, referencing *Andrews v. Turner*, 52 Ohio St.2d 31 (1977), found that " ... the evidence in this appeal showed that the Defendant [Appellant], after receiving the statutory advisement, acted in a manner to justify a reasonable person in the requesting officer's position to believe that the Defendant was capable of refusal and 'manifested unwillingness to take the test.' " Judgment Entry at 1.

*Assignment of Error*

{¶8} Appellant presents one assignment of error,

{¶9} "I. THE TRIAL COURT'S FINDING DEFENDANT-APPELLANT 'REFUSED' CHEMICAL TESTING IS NOT SUPPORTED BY THE RECORD. THE LAW HOLDS 'INABILITY' TO PROVIDE A CHEMICAL TEST AFTER GOOD FAITH EFFORTS DOES NOT CONSTITUTE A 'REFUSAL' OF SUCH TESTING PURSUANT TO R.C. 4511.197."

*Law and Analysis*

{¶10} As an initial procedural observation, we note a trial court's determination of an ALS appeal is an order made in a special proceeding and is final pursuant to R.C. 2505.02. *State v. Nowak*, 151 Ohio App.3d 652, 2003-Ohio-681 (3rd Dist.), ¶ 5, citing *State v. Williams* (1996), 76 Ohio St.3d 290, 667 N.E.2d 932, paragraph two of syllabus.

Appellant herein informs us that as of the date of his brief the underlying OVI charge was still pending before the trial court and the matter was set for a jury trial.

{¶11} R.C. 4511.191(B)(1) states in pertinent as follows: "Upon receipt of the sworn report of a law enforcement officer who arrested a person for a violation of division (A) or (B) of section 4511.19 of the Revised Code, section 4511.194 of the Revised Code or a substantially equivalent municipal ordinance, or a municipal OVI ordinance that was completed and sent to the registrar of motor vehicles and a court pursuant to section 4511.192 of the Revised Code in regard to a person who refused to take the designated chemical test, the registrar shall enter into the registrar's records the fact that the person's driver's or commercial driver's license or permit or nonresident operating privilege was suspended by the arresting officer under this division and that section and the period of the suspension, as determined under this section. The suspension shall be subject to appeal as provided in section 4511.197 of the Revised Code. ***."

{¶12} The Ohio Supreme Court has held an appeal of an ALS suspension is a civil matter, *see State v. Williams*, 76 Ohio St. 3d 290, 667 N.E. 2d 932(1996).

{¶13} "Our standard of reviewing the sufficiency of the evidence in a civil case is whether, after viewing the evidence in a light most favorable to the prevailing party, the judgment is supported by competent and credible evidence." *Moran v. Gaskella*, 5th Dist. Knox. No.2011–CA–21, 2012–Ohio–1158, ¶12, *citing Technical Construction Specialties v. Cooper,* 8th Dist. Cuyahoga No. 96021, 2011–Ohio–5252. On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving

conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist. 1983). *See also, State v. Thompkins*, 78 Ohio St.3d 380, 1997–Ohio–52; *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012–Ohio–2179. In weighing the evidence, however, we are always mindful of the presumption in favor of the trial court's factual findings. *Eastley* at ¶ 21.

{¶14} A refusal to submit to a chemical test of the blood, breath, or urine will occur where a person, by his or her acts, words or general conduct, manifests an unwillingness to submit to the test. *State v. Brown*, 12th Dist. Clermont CA2013–04–029, 2013-Ohio-4981, ¶ 9, citing *Hoban v. Rice,* 25 Ohio St.2d 111 (1971), paragraph three of the syllabus. However, "[i]t is not a refusal if a person is unable to perform the requested act." *Id.*, citing *State v. Williams,* 6th Dist. Ottawa No. OT–03–020, 2004–Ohio–2453, ¶ 12 (additional citations and internal quotations omitted).

{¶15} In the case at bar, the Trooper testified that he did not know the precise reason why the appellant's sample registered as invalid,

> Q. Then why did we have an invalid sample?
>
> A. Um, for whatever reason, the machine, he either stopped blowing or there was some type of, he blew too hard, I can't explain why there was an invalid sample.

T. at 40. Thus, the Trooper could not rule out the possibility that appellant by his actions caused the invalid sample. Appellant's testimony does not rule out this possibility,

> I figured, or I thought I followed instructions. Uh, I continually blew out as instructed and then breathe in. Um, I didn't know you could blow into it too hard…

T. at 47.

{¶16} R.C. 4511.191(A)(2) refers to the driver being deemed to have given his consent to "a chemical test or tests," provides that the "test or tests" are to be administered at the direction of the police officer, and specifies that the law enforcement agency designate "which of the aforesaid tests shall be administered." In *State v. Koziol,* the Court observed,

> The statute clearly provides that the law enforcement agency have the authority to designate the method of testing. R.C. 4511.191(A). Moreover, R.C. 4511.191 is clearly drawn in terms of consent to a "test or tests" of blood, breath, or urine. Thus, there is express language authorizing the police to conduct multiple tests if necessary. *See, e.g., State v. Bakst* (1986), 30 Ohio App.3d 141, 144, 506 N.E.2d 1208; *Stalego v. McCullion* (1984), 17 Ohio App.3d 67, 68-69, 477 N.E.2d 1215.

11th Dist. Lake No. 96-L-193, 1997 WL 585913(Aug. 29, 1997).

{¶17} In fact, R.C. 4511.191(A) merely provides that one "shall be deemed to have given consent" to the tests by virtue of his use of the public highways. "There is nothing whatsoever in the language stated therein that entitles anyone to the administration of the tests by the city or any arresting officer. Nor can this section be read in such a manner as to impose an obligation mandating these tests." *City of Kettering v. Baker,* 42 Ohio

St.2d 351, 354, 328 N.E.2d 805(1975). *Accord, State v. Crites,* 7th Dist. Harrison No. 99-518-CA, 2000-Ohio-2665 at *2.

{¶18} In the case at bar, we do not deny that the trooper had the option of conducting a second BAC test. However, appellant does not point to, nor are we aware of, any code section that would require the trooper to do so under circumstances such as this. For whatever reason, appellants sample tested as invalid. There is nothing improper if at that point the Trooper requests a different chemical test. In the case at bar, that offer was made nearly one hour and twenty minutes after the appellant had been stopped. When appellant failed to produce either sample, the Trooper was justified in finding a refusal.

{¶19} A refusal to submit to a chemical test of the blood, breath or urine will occur where a person, by his acts, words or general conduct, manifests an unwillingness to submit to the test. *Hoban v. Rice*, 25 Ohio St.2d 111, 267 N.E.2d 311, paragraph 3 of the syllabus (1971). Such refusal need not have been knowingly and intentionally made. Id. Whether or not a driver refused a test is a factual determination that is to be made by the trial court based upon all of the evidence before it. *State v. Owen*, 12th Dist. Warren No. CA97–12–229, 1998 WL 729204 (Oct. 19, 1998).

{¶20} Viewing the evidence in its totality, we therefore hold, a reasonable officer could conclude (1) appellant was capable of refusing the tests and (2) his conduct manifested an unwillingness to take the test. Such facts are sufficient to rise to the level of a constructive refusal. *Andrews, supra.* Based on the foregoing, we find there is relevant, competent, and credible evidence to support the trial court's denial of appellant's Administrative License Suspension appeal.

**{¶21}** Appellant's sole assignment of error is overruled.

**{¶22}** The judgment of the Municipal Court of Fairfield County, Ohio is affirmed.


By: Gwin, P. J., and

Baldwin, J., concur;

Wise, John, J., dissents

*Wise, J., dissenting.*

**{¶23}** I respectfully dissent from the majority's decision to affirm the trial court's denial of appellant's appeal of the Administrative License Suspension (ALS).

**{¶24}** Appellant herein has contended that the trial court erred in finding appellant had refused OVI chemical testing conducted by the trooper. It is undisputed that Trooper White decided not to offer appellant a second opportunity to submit to a breath test after the first attempt came back as "invalid sample." *See* Tr. at 19. He testified at the hearing that after appellant had commenced blowing into the machine for the first and only breath sample attempt, appellant continued blowing continuously as directed and "there was an audible tone from the instrument." Tr. at 39. When pressed as to why the sample came back as invalid, the trooper responded: "Um, for whatever reason, the machine, he either stopped blowing or there was some type of, he blew too hard. I, I can't explain why there was an invalid sample." Tr. at 40. He had also told appellant during the incident that two invalid samples would be an "automatic refusal." Tr. at 18.

**{¶25}** Appellant himself later testified that he thought he had followed the trooper's instructions, and that he would have attempted again to submit a breath sample if he had been offered a second chance. *See* Tr. at 47, 48.

**{¶26}** As indicated in the majority's recitation of the facts, Trooper White further testified that according to his training, the Datamaster had to be taken out of service if a second consecutive invalid breath sample occurred. *See* Tr. at 18-19. I recognize that when a chemical test is challenged based upon a failure to comply with an Ohio Department of Health regulation, the State need only demonstrate substantial compliance, rather than strict compliance, with that regulation. *See State v. Curtis*, 10th

Dist. Franklin No. 09AP–1199, 2011-Ohio-3298, ¶ 35, citing *State v. Burtch,* 10th Dist. Franklin No. 09AP–635, 2010–Ohio–259, ¶ 17 (additional citations omitted). However, in the present case the trooper stated that he did not know what Ohio Administrative Code section addressed removal of a BAC Datamaster after two invalid samples from an individual. Tr. at 18. But while a Datamaster must be taken out of service for inspection upon two controlled instrument checks outside the .005 range for the calibration solution target (*see* OAC 3701-53-04 (A)(2)), the State in its response brief provides no citation to an administrative provision supporting the trooper's assertions regarding removal of the machine from service.

{¶27} Next, in regard to the subsequent urine test attempt, it is undisputed that the trooper allowed just two minutes for appellant to provide a sample before marking him as "refused," even though appellant claimed he was able to produce "a couple of drops" of urine. *See* Tr. at 49. We note that during the ALS appeal hearing, the following exchange took place between appellant's counsel and Trooper White:

{¶28} "Q: Now, just so we're clear, Trooper, you're saying that Mr. Mattes said, 'I'm not going,' words to the effect that I'm not going to pee in that cup or no, I'm not going to take that test, or something to that effect?"

{¶29} "A: I cannot testify to that. He just did not provide a sample."

{¶30} Tr. at 22.

{¶31} Appellant testified that he asked for a glass of water and a twenty-minute waiting period to try for another urine sample, but that Trooper White declined and stated he needed to get back on patrol. Tr. at 50, 51.

**{¶32}** As the majority duly recites, "[i]t is not a refusal if a person is unable to perform the requested act." *State v. Brown*, *supra* (additional citations and internal quotations omitted). I am therefore troubled by Trooper White's stark assertion at the hearing that "not providing a sample is a refusal." Tr. at 36.

**{¶33}** The majority also recites the decision of the Ohio Supreme Court in *City of Kettering v. Baker*, *supra*, for the holding that R.C. 4511.191(A) does not impose an obligation mandating chemical testing conducted by municipalities. However, I note in that case, which did not stem from an appeal of an ALS suspension, Kettering authorities apparently had previously made a policy decision not to perform breathalyzer or blood tests at all, and the defendant therein did not request any chemical testing when transported to the jail. *See id.* at 352.

**{¶35}** In the case *sub judice*, appellant indeed requested testing, and given Trooper White's questionable curtailment of the breath test after one try and the restricted time frame immediately thereafter provided for the urine test, I do not find the trial court's conclusion that a valid testing refusal had occurred and the court's corresponding denial of appellant's ALS appeal were supported by competent, credible evidence. While I recognize the potential for stalling tactics by a driver submitting to OVI chemical testing, fundamental fairness demands that before driving privileges can be suspended on the basis of a motorist's "refusal" to allow such testing, a law enforcement officer must do more than what the trooper accomplished in this instance once the testing process has been initiated.

**{¶35}**  I would therefore sustain appellant's sole Assignment of Error and reverse the municipal court's affirmance of the ALS suspension.