[Cite as *Kent v. Hughes*, 2025-Ohio-1499.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

CITY OF KENT, OHIO,

        Plaintiff-Appellee,

    - vs -

MORGAN A. HUGHES,

        Defendant-Appellant.

**CASE NO. 2024-P-0067**

Criminal Appeal from the
Municipal Court, Kent Division

Trial Court No. 2023 TRC 02502 K

---

## OPINION AND JUDGMENT ENTRY

Decided: April 28, 2025
Judgment: Affirmed

---

*Hope L. Jones*, The City of Kent, Ohio Law Director, and *Eric R. Fink*, Assistant Law Director, 320 South Depeyster Street, Kent, OH 44240 (For Plaintiff-Appellee).

*Eric D. Hall*, P.O. Box 232, Medina, OH 44258 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1} Defendant-appellant, Morgan A. Hughes, appeals from the judgment entry of the Portage County Municipal Court, Kent Division, that sentenced him after his plea of no contest to one count of operating a motor vehicle while intoxicated ("OVI"). Hughes contends the trial court erred by overruling his motion to suppress. We affirm.

{¶2} In the early morning hours of December 27, 2023, a City of Kent police officer observed Hughes driving without headlights in the drizzling rain in downtown Kent, Ohio. The officer initiated a traffic stop. After Hughes failed field sobriety tests, the officer arrested him for OVI and took him to the station where Hughes consented to a breathalyzer test and a urinalysis. Ultimately, the officer cited Hughes with an OVI, a first-

degree misdemeanor in violation of Kent City Ord. 333.01(a)(1)(A), and driving without headlights, a minor misdemeanor in violation of Kent City Ord. 337.02(a).

{¶3}  Hughes filed a motion to suppress, seeking to suppress any evidence obtained from the urinalysis.  Hughes argued the officer lacked probable cause to continue his investigation of whether Hughes was impaired by drugs or illicit substances because the officer conducted field sobriety tests only for alcohol and his breathalyzer test result was under the legal limit for alcohol.

{¶4}  On July 25, 2024, the day of the motion to suppress hearing, the arresting officer issued a second traffic citation because the results of the urinalysis revealed a blood alcohol concentration ("BAC") of .11, as well as cocaine and marijuana.  The officer cited Hughes with OVI (cocaine), a first-degree misdemeanor in violation of Kent Ord. 333.01(a)(1)(J)(3), and OVI (marijuana), a first-degree misdemeanor in violation of Kent Ord. 333.01(a)(1)(J)(7).

{¶5}  At the motion to suppress hearing, Hughes argued the officer did not have probable cause (1) for the arrest or (2) to request the urinalysis after conducting the breathalyzer test.

{¶6}  The arresting officer, the sole witness at the hearing, testified that he was on duty and patrolling in a marked police unit during the early morning hours of December 27, 2023.  At approximately 3:00 a.m., he observed a dark SUV with no headlights traveling southbound on Water Street in downtown Kent, Ohio.  The vehicle turned onto E. William Street and then made a right-hand turn onto S. Depeyster Street.  At that point, the officer initiated the traffic stop.

{¶7} Approaching from the passenger side, the officer observed three occupants: the driver, Hughes; a female front passenger; and a male backseat passenger. The officer found the occupants gave conflicting stories of where they were coming from, and he observed there was an odor of alcohol emanating from the vehicle and the driver had bloodshot, glossy eyes. Hughes told the officer they were coming from Dreamers, an adult cabaret in Akron, Ohio.

{¶8} The officer asked Hughes to step away from the vehicle and, observing that the odor of alcohol was emanating from Hughes' person, decided to conduct field sobriety tests. The officer administered three tests: the Horizontal Gaze Nystagmus ("HGN"), observing four out of six clues of impairment; the Walk and Turn, observing two out of nine clues of impairment; and the One-Leg Stand, observing one clue of impairment. Based upon these results and the totality of the circumstances, the officer believed Hughes was under the influence of alcohol and/or drugs and arrested him.

{¶9} At the station, prior to administering the breathalyzer test, the officer read Hughes the BMV 2255 form, which, in part, advises individuals arrested for OVI that they will be placed under an administrative license suspension if they fail or refuse to submit to a blood, breath or urine test. Hughes consented to the test. The officer testified Hughes "seemed to have struggled during the breath test and his breathing." The breathalyzer test revealed Hughes had a BAC of .077, less than the legal limit of .08.

{¶10} The officer explained he asked Hughes for a second chemical test, the urinalysis, "[d]ue to the observations I made out on the field for placing him under arrest and getting a low blow under the legal limit, he was struggling with that test as well. I

decided to administer another test so that I could get better results." Hughes consented to the urine sample.

{¶11} On cross-examination, the officer testified that he never observed Hughes driving erratically, nor was he fidgety or slurring his speech. While the court was viewing the body-cam video, the officer explained that a minimum of two clues of impairment are needed to fail a field sobriety test. Further, while he may have only observed one clue on the walk and turn, there appeared to be more clues in the video that he had failed to observe. The officer also testified he did not note Hughes' breathing problems during the administration of the breathalyzer test in his report, and while he was testing Hughes at the police station, he was informed by other officers, who were conducting an inventory search of the vehicle, that there was "marijuana shake" in the vehicle.

{¶12} In July 2024, the trial court overruled Hughes' motion to suppress. The court found the officer had probable cause to stop Hughes, to continue the stop for investigatory purposes for suspicion of driving under the influence, to effectuate Hughes' arrest, and to request a urine sample.

{¶13} In September 2024, Hughes pleaded no contest to one count of OVI, a first-degree misdemeanor in violation of Kent Ord. 333.01(a)(1)(A). The court sentenced Hughes to a 180-day suspended jail sentence provided he complete a driver intervention program and abstain from drugs and alcohol for two years, suspended his license for one year, and ordered him to pay a fine of $425. The trial court stayed Hughes' sentence pending resolution of this appeal.

{¶14} Hughes raises one assignment of error for our review:

Case No. 2024-P-0067

{¶15} "The trial court erred [by] denying Appellant's motion to suppress[,] ruling that the officer had probable cause to arrest Appellant, request he submit to a breathalyzer, and then request a urine analysis after the breathalyzer result indicated Appellant was under the legal limit."

{¶16} When reviewing a trial court's ruling on a motion to suppress, this court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Village of Kirtland Hills v. Fuhrman*, 2008-Ohio-2123, ¶ 8 (11th Dist.), citing *State v. Burnside*, 2003-Ohio-5372, ¶ 8. "'Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard.'" *Id.*, quoting *State v. Retherford*, 93 Ohio App.3d 586, 592 (2d Dist. 1994).

{¶17} Hughes first challenges whether the officer had probable cause to arrest him for OVI.

{¶18} "Because an arrest is the ultimate intrusion upon a citizen's liberty, the arresting officer must have more than a reasonable, articulable suspicion of criminal activity. He must have probable cause to believe that the individual has committed a crime." *State v. Evans*, 127 Ohio App.3d 56, 64 (11th Dist. 1998). "[A] police officer has probable cause to arrest for driving under the influence where the facts and circumstances within the officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a prudent man in believing that the accused had operated the vehicle while under the influence. In making this determination, each . . . case must be decided on its own particular and peculiar facts." *State v. Hummel*, 2003-Ohio-4602, ¶ 30 (11th Dist.).

Case No. 2024-P-0067

**{¶19}** While Hughes contends the officer lacked probable cause to arrest him for intoxication because his speech was coherent, he only had one traffic violation, and he was cooperative during the traffic stop, these are only some of the factors that an officer considers when determining if there is a reasonable suspicion to conduct field sobriety tests and/or when analyzing for actual impairment. *See Evans*, 127 Ohio App.3d 56 (11th Dist. 1998) (non-exhaustive list of factors of impairment).

**{¶20}** The evidence at the motion-to-suppress hearing revealed the arresting officer observed Hughes driving without his headlights at 3:00 a.m. in light rain. When he pulled the vehicle over, Hughes and his passengers gave the officer conflicting accounts of their whereabouts, and an odor of alcohol emanated from the vehicle. When Hughes exited the vehicle, the officer smelled the odor of alcohol on Hughes' person, and Hughes' eyes were bloodshot and glossy. Hughes subsequently failed at least two of the three field sobriety tests that were administered. We agree with the trial court that under these circumstances, the experienced and trained arresting officer had probable cause to arrest Hughes for driving under the influence and to subject him to further investigation at the police station. *See Evans* at 64 (officer had probable cause to arrest defendant for driving under the influence and to subject him to further investigation at the station where officer witnessed defendant driving the vehicle, smelled the odor of alcohol, and defendant admitted to drinking).

**{¶21}** Hughes also challenges the officer's decision to administer the urinalysis after the breathalyzer test revealed his BAC was below the legal limit.

**{¶22}** As part of the privilege to drive in Ohio, a driver implicitly consents to a search, through means of a chemical test or tests, to determine the level of intoxicating

Case No. 2024-P-0067

substances in the driver's body upon the driver's arrest for OVI.  *State v. Hoover*, 2009-Ohio-4993, ¶ 14.  Pursuant to R.C. 4511.191(A)(2),

> Any person who operates a vehicle . . . upon a highway or any public or private property used by the public for vehicular travel or parking within this state or who is in physical control of a vehicle . . . shall be deemed to have given consent to a chemical *test or tests* of the person's whole blood, blood serum or plasma, breath, or urine to determine the alcohol, drug of abuse, controlled substance, metabolite of a controlled substance, or combination content of the person's whole blood, blood serum or plasma, breath, or urine if arrested for a violation of division (A) or (B) of section 4511.19 of the Revised Code, section 4511.194 of the Revised Code or a substantially equivalent municipal ordinance, or a municipal OVI ordinance.  (Emphasis added.)

**{¶23}**  The Supreme Court of Ohio has determined that the implied consent statute is constitutional, violating neither the search and seizure requirements of the Fourth Amendment nor the Fifth Amendment right against self-incrimination.  *Hoover* at ¶ 18, citing *State v. Starnes*, 21 Ohio St.2d 38 (1970), paragraph one of the syllabus.

**{¶24}**  At the motion to suppress hearing, the officer testified that he requested a second test because Hughes appeared to be struggling with his breathing during the breathalyzer test.  Contrary to Hughes' assertion, nothing prevents an officer from administering multiple chemical tests.  As this court explained in *State v. Koziol*, 1997 WL 585913 (11th Dist. Aug. 29, 1997), "R.C. 4511.191 is clearly drawn in terms of consent to a 'test or tests' of blood, breath, or urine.  Thus, there is express language authorizing the police to conduct multiple tests if necessary."  *Id.* at *5.  Because the statute "does not establish a maximum number of tests," this court concluded "it was not unreasonable or improper" for the officer to request that the defendant submit to a blood test after the defendant failed to properly perform the breathalyzer test.  *Id.* at *6.  Similarly, in *State v. Baskt*, 30 Ohio App.3d 141 (1st Dist. 1986), the First District concluded that if officers

have probable cause to arrest for any violation of R.C. 4511.19, they are permitted to conduct more than one test pursuant to R.C. 4511.191. *Id.* at 144. In that case, the defendant's breathalyzer also tested below the legal limit, and suspecting the defendant's condition might be due to a drug of abuse, the officers requested him to submit to a urinalysis. *Id.* at 143. *See also State v. Mattes*, 2017-Ohio-7666, ¶ 18 (5th Dist.) (the trooper's request for a different chemical test, instead of requesting a second breathalyzer test, was not improper).

{¶25} In sum, the officer established probable cause to arrest Hughes for a suspected OVI, and the officer was free to administer a chemical "test or tests" as his investigation required. *See* R.C. 4511.191. Accordingly, the trial court did not err in denying Hughes' motion to suppress.

{¶26} Hughes' sole assignment of error is without merit.

{¶27} The judgment of the Portage County Municipal Court, Kent Division, is affirmed.

ROBERT J. PATTON, P.J.,

SCOTT LYNCH, J.,

concur.

Case No. 2024-P-0067

# JUDGMENT ENTRY

For the reasons stated in the opinion of this court, appellant's assignment of error is without merit.  It is the judgment and order of this court that the judgment of the Portage County Municipal Court, Kent Division, is affirmed.

Costs to be taxed against appellant.

JUDGE MATT LYNCH

PRESIDING JUDGE ROBERT J. PATTON,
concurs

JUDGE SCOTT LYNCH,
concurs

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case No. 2024-P-0067