DECISION.
{¶ 1} In this case, we are asked to decide at what point defendant-appellant Katharine Blair was under arrest for operating a vehicle under the influence of alcohol ("OVI").[1] Blair contends that she was arrested before the administration of field sobriety tests, and without probable cause, where various officers (1) requested that she remain in her vehicle after she had crashed into another car; (2) placed her in the rear seat of a cruiser; and (3) transported her across the highway to perform the field sobriety tests. But because Blair was not arrested until she failed the field sobriety tests, her assignment of error is overruled, and the judgment of the trial court convicting her of OVI is affirmed.
 {¶ 2} In October 2004, Blair was charged with OVI. Blair moved to suppress incriminating evidence, but the trial court denied her motion. After having her suppression motion denied, Blair pleaded no contest to the charge and was found guilty of OVI. On appeal, Blair challenges the trial court's denial of her suppression motion.
 {¶ 3} On the date of the accident, Blair was traveling north on Interstate 71 when she lost control of her vehicle and crashed into another vehicle. Officer Thomas Stanton observed the two vehicles as they appeared to be "coming apart after they had made contact" with each other. Stanton did not see the initial impact. On seeing that the two cars had collided, Stanton radioed for assistance, and Officer Thomas Rackley immediately responded. Rackley approached one of the vehicles and saw Blair seated in the driver's seat. On closer examination, Rackley detected an odor of alcohol emanating from the vehicle. Rackley testified that Blair's eyes were dilated, that she seemed confused, and that she appeared to have a blank stare on her face. Based on these observations, Rackley told Stanton that he believed Blair was under the influence of alcohol.
 {¶ 4} Stanton then approached Blair's vehicle and saw that the airbag had deployed and that airbag dust was still in the air. Stanton told Blair to stay in her vehicle while other officers attempted to stop the interstate traffic and to secure the accident scene. Blair complied.
 {¶ 5} Officer Paul Grein was also dispatched to the scene. Stanton told Grein that that he had not talked to Blair yet, but that she was under the influence. Stanton also told Grein that Blair had earlier been chased by another car before the accident. A short time later, Grein removed Blair from her vehicle and placed her in the back of his cruiser. Grein then drove Blair away from the clutter and mayhem of the accident scene so that he could administer field sobriety tests.
 {¶ 6} Grein testified that he had only moved Blair across the highway: "I initially parked on the left side of the interstate near the on ramp from the Norwood Lateral, and I moved to the right side in the berm area of the interstate near the exit ramp to, I believe, the Norwood Lateral there." Once they were across the highway, the field sobriety tests were administered on a flat, dry surface. Grein further testified that Blair mixed up and missed some letters while reciting the alphabet, and that her speech was slurred.
 {¶ 7} Grein next asked Blair to perform the walk-and-turn test, but she was unable to complete the test because her balance was so poor. In fact, during the test Blair had to use Grein's shoulder to brace herself from falling, and she was unable to stand with one foot in front of the other without stumbling off the line. At the conclusion of the field sobriety tests, Grein told Blair that she was under arrest for OVI.
 {¶ 8} At a suppression hearing, the credibility of the witnesses is an issue for the trier of fact.[2] Accepting the properly supported findings of the trier of fact as true, an appellate court must determine as a matter of law, without deference to the trial court's conclusion, whether the trial court erred in applying the substantive law to the facts of the case.[3]
 {¶ 9} Blair assigns error to the trial court's finding that there was probable cause to arrest her for OVI. The gravamen of Blair's complaint is that her arrest had occurred when Stanton told another officer that Blair was under the influence, and when he requested that she remain in her vehicle. Blair contends that at that point there was insufficient probable cause to justify the purported arrest. Alternatively, Blair argues that the arrest had occurred either when Grein placed Blair in the back of his cruiser, or when Grein transported Blair to another location to perform the field sobriety tests. The dispositive inquiry is at what point Blair was under arrest. We are convinced that Blair was not under arrest until she failed the field sobriety tests, and the judgment of the trial court is accordingly affirmed.
 I. When was Blair Arrested? {¶ 10} Under Ohio law, an arrest occurs when there is (1) an intent to arrest, (2) under a real or pretended authority, (3) accompanied by actual or constructive seizure or detention of the person, and (4) which is so understood by the person arrested.[4]
 {¶ 11} In this case, we are presented with a factual scenario that is somewhere between an investigative detention and an arrest. The determination of when an investigative detention becomes an arrest requires that the court use common sense and ordinary human experience as guidelines.[5]
 {¶ 12} Blair first contends that the arrest occurred when Stanton told her to remain in her vehicle. But Stanton testified that the accident had occurred on I-71, and that there was debris strewn about the roadway. He also testified that he and Rackley had to quickly maneuver their vehicles into a position that would secure the scene and prevent further accidents. Stanton also stated that he told Blair to remain in her vehicle because there were "still people trying to drive through the scene, and [he] didn't want [Blair] to get run over," and that the scene was "hectic." We note that at the time Blair appeared to be dazed, was confused, and was unresponsive to the officers' inquiries. And despite the officers' best efforts, they were having a difficult time keeping people from driving through the accident scene.
 {¶ 13} Under these circumstances, safety and security justified the protective measures taken by the officers. These facts failed to meet the intent-to-arrest element required by Darrah. There was testimony that Blair was incoherent, and whether her state was chemically induced was irrelevant. The evidence also showed that the accident scene was scattered with debris, that overly anxious motorists had repeatedly driven through the scene, creating a great risk of harm to both officers and victims alike, and that the responding officers were having a difficult time securing the area. Under these chaotic conditions, Blair's unresponsive state, coupled with the dangerous conditions, justified the officers' actions and belie each of Blair's arguments. The record convinces us that the officers did not intend to arrest Blair until after the field sobriety tests were performed. Asking Blair to remain in her vehicle, moving her to the back of a cruiser, and transporting her across the highway were all done to secure the accident scene and to ensure Blair's protection. The officers would have been derelict if they had not acted accordingly.
 {¶ 14} Common sense tells us that Stanton justifiably requested that Blair remain in her vehicle. Stanton testified that he had asked Blair "several times if she was ok, to get her attention * * * . [And] the whole time she held on to the steering wheel, and the airbag [was] deployed and she [was] just sitting there." Stanton had not intended for Blair to be under arrest at the time.
 {¶ 15} Likewise, temporarily placing Blair in the rear of a cruiser did not require probable cause because she was not under arrest. InState v. McFarland, the suspect sat in a cruiser while a background check was conducted for outstanding warrants.[6] And in State v.Blankenship, the suspect sat in the police car while a traffic ticket was being issued.[7] Finally, in State v. Queensberry, the suspect was not under arrest when he was handcuffed and placed in the back of a cruiser, where the action was taken for safety reasons and in furtherance of an investigation.[8]
 {¶ 16} Finally, driving Blair across the highway and out of harm's way could not have been considered an arrest — at least not in this instance, where the movement was of a minimal distance, was necessary to protect Blair, and had allowed the remaining officers to clear the wreckage. The question of when the transportation transcended an investigative detention to an arrest is a closer question — but not that close. Clearly Grein moved Blair so that he could investigate whether Blair was under the influence or not. But in this case, we are left wondering what Grein's alternatives would have been. Grein could have (1) performed the field sobriety tests in the middle of I-71, (2) conducted the tests on the shoulder of the highway, while motorists picked their collective ways through wreckage and police cruisers, or (3) moved Blair a short distance away from the accident scene, to a road less traveled. Grein got it right.
 {¶ 17} By all accounts, pandemonium reigned at the accident scene. Motorists were disregarding the line of defense created by the officers' patrol cars, creating Cincinnati's own motorist-induced version of spaghetti junction. The safety of both Blair and Grein justified moving Blair from the left side of the highway to the right side, at a ramp out of harm's way.[9] And we cannot say that Blair was under arrest at this point. Accordingly, Blair's assignments of error are meritless, and we hold that Blair was not under arrest until after the field sobriety tests had been performed. The judgment of the trial court is affirmed.
Judgment affirmed.
[1] R.C. 4511.19(A)(1)(a).
[2] See State v. Mills (1992), 62 Ohio St.3d 357, 582 N.E.2d 972;State v. Fanning (1982), 1 Ohio St.3d 19, 437 N.E.2d 583.
[3] See State v. Klein (1991), 73 Ohio App.3d 486,597 N.E.2d 1141.
[4] See State v. Darrah (1980), 64 Ohio St.2d 22, 26,412 N.E.2d 1328.
[5] See U.S. v. Sharpe (1985), 470 U.S. 675, 105 S.Ct. 1568.
[6] (1982), 4 Ohio App.3d 158, 446 N.E.2d 1168.
[7] (1985), 12th Dist. No. CA85-03-017.
[8] 2001-Ohio-3267.
[9] See, e.g., Pennsylvania v. Mimms (1977), 434 U.S. 106,98 S.Ct. 330.