[Cite as *State v. Hall*, 2016-Ohio-783.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-150317 |
| | | TRIAL NO.  C-14TRC-48165A |
| Plaintiff-Appellant, | : | |
| vs. | : | *O P I N I O N.* |
| DANA HALL, | : | |
| Defendant-Appellee. | : | |

Criminal Appeal From:  Hamilton County Municipal Court

Judgment Appealed from is:  Reversed and Cause Remanded

Date of Judgment Entry on Appeal:  March 2, 2016

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Sean M. Donovan*, Assistant Prosecuting Attorney, for Plaintiff-Appellant,

*Jonathan N. Fox,* for Defendant-Appellee.

Please note:  this case has been removed from the accelerated calendar.

**CUNNINGHAM, Judge.**

{¶1} Plaintiff-appellant the state of Ohio appeals from the order of the Hamilton County Municipal Court granting defendant-appellee Dana Hall's motion to suppress evidence for lack of probable cause at the time of her arrest. Hall was arrested for operating a vehicle while under the influence of alcohol ("OVI") in violation of R.C. 4511.19(A)(1)(a). Although Hall was placed in a police cruiser for safety reasons and denied the use of her phone during the OVI investigation, she was lawfully detained, and she was not under arrest until after she became belligerent and combative and refused to take field-sobriety tests. These facts, when considered in the totality of the other circumstances, including the officer's observation of a strong odor of alcohol about her person, Hall's admission to drinking alcohol earlier in the evening, her trouble with balancing, and her involvement in a single-car accident, provided probable cause for the arrest. Therefore, we reverse the trial court's judgment.

## I. Background Facts and Procedure

{¶2} In the late evening on October 6, 2014, veteran patrol officer Jeff Carnine of the Forest Park Police Department responded to the scene of a one-car accident on westbound Interstate-275. He found Hall's disabled vehicle in the high-speed lane, where it had stopped after striking and riding along the median guardrail for a distance. As a result of the impact, the front bumper and wheel had separated from the car and the airbags had deployed.

{¶3} Hall told the officer that she had struck the guardrail after swerving to miss an animal or article in the roadway. She indicated that she had not suffered any injury, but she appeared agitated from the crash and had difficulty with her balance.

2

Officer Carnine detected a "general" odor of alcohol about her person at this time, but Hall spoke clearly and cooperated.

{¶4} For safety reasons, Officer Carnine had Hall sit in the back of his police cruiser while he investigated the accident. He observed that Hall had trouble walking in a straight line as she ambled to his cruiser. He found no evidence of an animal strike after examining the damage to Hall's vehicle.

{¶5} After diligently investigating the accident, he returned to his cruiser to speak with Hall. At that point, he noticed a "very strong" odor of alcohol. Before this observation, he had not considered an OVI investigation.

{¶6} Because of this strong odor of alcohol, he asked Hall if she had consumed any alcohol that evening. Hall first denied drinking anything, but when the officer told her that he could smell alcohol on her person, she explained that she had stopped drinking several hours earlier.

{¶7} Officer Carnine then told Hall that she was under investigation for OVI and asked her to exit from the cruiser to perform field-sobriety tests. Hall requested to use her phone to call "someone." The officer advised her that she could not because he was conducting an investigation. Hall refused to exit from the cruiser and became belligerent and combative. She called the officer a "son-of-a-bitch" and attempted to kick out the back windows of the cruiser. At that point, Officer Carnine placed her under arrest for OVI and took her into custody.

{¶8} Hall moved to suppress the evidence. At the hearing on the motion, the issue was narrowed to whether Officer Carnine had probable cause to arrest her. Officer Carnine was the sole witness at the hearing. His testimony unequivocally provided that Hall had been placed in the cruiser for safety reasons while he investigated the accident, and that he had not physically placed Hall under arrest for

OVI until she had become belligerent and combative and refused to perform field-sobriety tests at the scene.

{¶9} After the hearing, Hall filed a memorandum in support of her motion. She argued that at the time she was told that she could not use her phone when confined in the police cruiser, she had been unreasonably seized in violation of her constitutional rights because the officer lacked probable cause to arrest. Subsequently, the trial court granted the motion to suppress.

{¶10} The court stated on the record its rationale for granting the motion. The court adopted the historical facts as testified to by Officer Carnine, except for one. Notwithstanding Officer Carnine's unchallenged testimony otherwise, the court recalled that Officer Carnine had physically placed Hall under arrest for OVI before she had become belligerent and refused to perform the field-sobriety tests.

{¶11} The trial court paraphrased the officer's testimony as follows: "I remember * * * her asking to [use] the phone to call somebody. I said no. I did tell her I was [doing] an OVI investigation * * * and then she became belligerent and didn't want to get out of the cruiser. I had already arrested her at that point." The court was perplexed as to why the officer wanted to perform a field-sobriety test after her arrest. The court concluded that Officer Carnine had lacked probable cause at the time of the arrest, and granted Hall's motion, suppressing evidence of Hall's truculence and her refusal to perform the sobriety tests. The state now appeals, assigning error to the trial court's finding that there was no probable cause to arrest Hall for OVI.

## II. Standard of Review

{¶12} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d

71, ¶ 8. The trial court when ruling on the motion to suppress "assumes the role of trier of fact and is therefore in the best position to resolve the factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992).

{¶13} We review the trial court's findings of the historical facts only for clear error. *State v. Bryant*, 1st Dist. Hamilton No. C-090546, 2010-Ohio-4474, ¶ 16, citing *Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). And we "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside*, citing *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982). Then, in light of the established facts, we must "independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*

### III. Analysis

{¶14} Hall's motion to suppress challenged the lawfulness of her arrest for OVI in light of the constitutional limit on unreasonable seizures. The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution protect against, among other things, unreasonable seizures of the person. Evidence derived from a search or seizure that violates the Fourth Amendment is subject to exclusion at trial. *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

{¶15} Hall's warrantless arrest for OVI was required to be supported by probable cause. *State v. Hummel*, 154 Ohio App.3d 123, 2003-Ohio-4602, 796 N.E.2d 558, ¶ 27-29 (11th Dist.), explaining *Oregon v. Szakovits*, 32 Ohio St.2d 271, 291 N.E.2d 742 (1972). Probable cause to arrest exists when an officer is aware of facts that would lead a reasonable person to believe that the suspect has committed

or is committing a crime. *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).

{¶16} But not every seizure of a citizen by a police officer is an arrest requiring probable cause. There are three general categories of police-citizen contacts for purposes of determining the protections afforded by the Fourth Amendment. These categories include a (1) consensual encounter, (2) an investigative detention, or "*Terry* stop," and, finally, (3) a seizure that constitutes an arrest. *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (plurality opinion), cited in *State v. Mitchem*, 1st Dist. Hamilton No. C-130351, 2014-Ohio-2366, ¶ 17; *State v. Taylor*, 106 Ohio App.3d 741, 747-749, 667 N.E.2d 60 (2d Dist.1995).

{¶17} An investigative detention or *Terry* stop is less intrusive than a formal arrest, but more intrusive than a consensual encounter. *Taylor* at 748. Generally, an investigatory detention is reasonable and, thus, passes constitutional muster, when the officer performing the investigatory detention has a reasonable, articulable suspicion of criminal activity. *Taylor* at 749, citing *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Limited in both duration and purpose, the investigative detention may last only as long as it reasonably takes a police officer to confirm or dispel suspicion of criminal activity. *Terry*; *Royer* at 500.

{¶18} Under Ohio law, an arrest occurs when there is (1) an intent to arrest, (2) under real or pretended authority, (3) accompanied by actual or constructive seizure or detention of the person, and (4) that is so understood by the person arrested. *State v. Barker*, 53 Ohio St.2d 135, 372 N.E.2d 1324 (1978), paragraph one of the syllabus, cited in *Taylor* at 749; *Cincinnati v. Blair*, 1st Dist. Hamilton Nos. C-

060045 and C-060046, 2006-Ohio-6619, ¶ 10, citing *State v. Darrah*, 64 Ohio St.2d 22, 26, 412 N.E.2d 1328 (1980).

{¶19} In this case, it was undisputed that Officer Carnine's initial detention of Hall in the back of his cruiser for safety reasons while he investigated the accident was lawful. The first issue, then, is whether that lawful detention became an unlawful arrest when the detention was prolonged for questioning related to the OVI investigation and when the officer additionally restricted Hall's use of her phone. The trial court concluded that it did.

{¶20} In determining that Hall was unlawfully arrested, however, the trial court relied on its erroneous factual determination that Officer Carnine had formally placed Hall under arrest *before* she became belligerent and combative and refused to perform field-sobriety tests. This finding was not supported by any evidence and was clearly erroneous.

{¶21} *When did the arrest occur?* The uncontroverted evidence established that Officer Carnine placed Hall under arrest only after she called him a "son-of-a-bitch," attempted to kick out the windows of the police cruiser, and refused to take the tests, and that he had no intent to arrest her until then. According to the testimony, Officer Carnine expressly told Hall that he was *investigating* her for OVI immediately before she reacted with truculence.

{¶22} A police officer's placement of a person in the back of a police vehicle does not automatically transform an investigatory detention into a formal arrest that requires probable cause. *See Bennett v. Eastpointe*, 410 F.3d 810, 837-840 (6th Cir.2005); *Blair*, 1st Dist. Hamilton Nos. C-060045 and C-060046, 2006-Ohio-6619, at ¶ 15; *Cincinnati v. Keiser*, 1st Dist. Hamilton No. C-060773, 2007-Ohio-4467, ¶ 7-

10. Nor should the continued detention require probable cause in all cases. *See State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282, ¶ 15.

{¶23} We are convinced that Officer Carnine lacked the requisite intent to arrest Hall for OVI at any point before he formally placed her under arrest, and that Hall could not have understood that she was under arrest before that time. Therefore, the trial court erred in concluding that Hall was "arrested" during this earlier time. *See Barker*, 53 Ohio St.2d 135, 372 N.E.2d 1324, at syllabus; *Blair* at ¶ 13 and 15; *Keiser* at ¶ 10.

{¶24} *Continued detention supported by reasonable, articulated facts of driving while impaired.* Without a doubt, Hall was still detained in the police cruiser for investigatory purposes when the officer asked her to submit to field-sobriety tests and refused her request to use her phone. But this continued detention was lawful. A lawful detention may be prolonged upon the discovery of additional facts "that give rise to a reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop." *Batchili* at ¶ 15.

{¶25} Here, the continued detention was supported by specific facts that gave rise to the suspicion that Hall had driven while impaired. The officer testified that he had noticed a strong odor of alcohol inside his police cruiser when he returned from investigating the accident, and that when he asked Hall about her drinking, she had first denied it and later confirmed it. These facts placed the officer's previous observances—including Hall's difficulty with her balance and her admission to driving the vehicle that had been involved in a single-car accident—in a different light.

{¶26} Ultimately, the officer's reasonable suspicion and the safety concerns related to the location of the scene of the accident justified Hall's continued

8

detention in the back of the officer's cruiser for the OVI investigation. And the officer's refusal to allow Hall to use her phone during that short investigation was a minimal restraint that enabled the officer to complete the investigation. The officer's reasonable suspicion justified the scope of this intrusion under the circumstances. *See Royer*, 460 U.S. at 500, 103 S.Ct. 1319, 75 L.Ed.2d 229.

{¶27} In summary, accepting the properly-supported findings, we are convinced that no arrest, formal or de facto, occurred until after Hall acted belligerently and combatively and refused to perform field-sobriety tests, and that she was lawfully detained before that time. Therefore, Hall's truculence and refusal are part of the totality of the circumstances examined in determining whether a reasonable officer had probable cause to arrest Hall for OVI.

{¶28} *Did the officer have probable cause to arrest?* The question remains as to whether Officer Carnine had probable cause to justify the arrest of Hall. In the OVI context, courts must determine whether, "at the moment of the arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence." *State v. Homan*, 89 Ohio St.3d 421, 427, 732 N.E.2d 952 (2000), *superseded by statute on other grounds*, quoted in *Bryant*, 1st Dist. Hamilton No. C-090546, 2010-Ohio-4474, ¶ 15.

{¶29} "Driving under the influence of alcohol" means that the offender had operated a vehicle and had consumed alcohol in a quantity that had "adversely and appreciably impair[ed] [her] actions or mental processes and deprive[d] [her] of that clearness of intellect and control of [her]self which [s]he would otherwise have had." *State v. Bakst*, 30 Ohio App.3d 141, 145, 506 N.E.2d 1208 (1st Dist.1986), quoted in

*State v. Furguson*, 1st Dist. Hamilton Nos. C-130173, C-130174 and C-130175, 2013-Ohio-5388, ¶ 14.

{¶30} A defendant's belligerence and combativeness may be a sign of impairment. *Furguson* at ¶ 15; *State v. Heitzenrater*, 12th Dist. Butler No. CA98-06-119, 1998 Ohio App. LEXIS 5829 (Dec. 7, 1998) (defendant's belligerent conduct contributed to a determination that his OVI arrest was supported by probable cause); *Kirkland Hills v. Deir*, 11th Dist. Lake No. 2004-L-005, 2005-Ohio-1563, ¶ 20 (defendant's moods swings and uncooperative behavior, including swearing, could be used to establish probable cause to arrest for OVI). And, when other incriminating factors are present, the refusal to submit to a field-sobriety test can serve as a factor in support of a finding of probable cause. *Kinlin v. Kline*, 749 F.3d 573, 580 (6th Cir.2014); *State v. Carnes*, 1st Dist. Hamilton No. C-140188, 2015-Ohio-379, ¶ 14.

{¶31} *Arrest was supported by probable cause.* Here, Officer Carnine was the only witness called at the suppression hearing, and the trial court never questioned his credibility. The trial court's findings included that Hall had been involved in a single-car accident, she had trouble keeping her balance, there was a strong odor of alcohol about her person, she admitted to consuming alcohol earlier that night, and she responded belligerently and combatively when told that she could not make a phone call and when asked to perform sobriety tests. This conduct included kicking the windows of the police cruiser and calling the officer a "son-of-a-bitch." Additionally, Hall refused to perform the sobriety tests.

{¶32} We hold that in light of the totality of these circumstances, Hall's arrest was supported by probable cause. *See Homan*, 89 Ohio St.3d at 427, 732 N.E.2d 952; *Bakst*, 30 Ohio App.3d at 142, 506 N.E.2d 1208; *Bryant*; *Heitzenrater.*

Because her arrest was supported by probable cause, the trial court erred by granting Hall's motion to suppress.

## IV. Conclusion

{¶33}  We sustain the state's assignment of error, we reverse the trial court's judgment granting the motion to suppress, and we remand this cause to the trial court for further proceedings consistent with law and this opinion.

Judgment reversed and cause remanded.

**FISCHER, P.J.,** and **HENDON, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.