[Cite as *State v. Warner*, 2016-Ohio-4660.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | CASE NO. 15 CO 0026 |
| | ) | |
| PLAINTIFF-APPELLANT, | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| JON M. WARNER, | ) | |
| | ) | |
| DEFENDANT-APPELLEE. | ) | |

CHARACTER OF PROCEEDINGS:        Criminal Appeal from the Court of Common Pleas of Columbiana County, Ohio
Case No. 2015-CR-181

JUDGMENT:        Affirmed.

APPEARANCES:

For Plaintiff-Appellant:        Atty. Tammie M. Jones
Assistant Prosecuting Attorney
Columbiana County Prosecutors Office
105 South Market Street
Lisbon, Ohio 44432

For Defendant-Appellee:        Atty. Ben Joltin
106 South Broad Street
Canfield, Ohio 44406

JUDGES:

Hon. Carol Ann Robb
Hon. Gene Donofrio
Hon. Mary DeGenaro

Dated:  June 17, 2016

ROBB, J.

**{¶1}** Appellant State of Ohio appeals the decision of Columbiana County Common Pleas Court granting Defendant-Appellee Jon Warner's motion to suppress. The state contends the decision was incorrect. It argues the stop consisted of two encounters. The first was consensual and resulted in information that provided a reasonable articulable suspicion of criminal activity which justified the second encounter. Alternatively, the state contends even if there was only one encounter, the call from dispatch reporting a suspicious vehicle at the Family Dollar store provided a reasonable articulable suspicion of criminal activity to justify a *Terry* stop.

**{¶2}** We find no merit with the state's arguments. The trial court found there was one encounter between the Officers and Appellee. We are required to defer to the trial court's findings of fact. Given the facts as set forth in the record and found by the trial court, we hold the encounter began as an investigatory stop, there was no reasonable articulable suspicion of criminal activity, and as such, Appellee's Fourth Amendment rights were violated. The trial court's decision is affirmed.

<u>Statement of the Case</u>

**{¶3}** On April 23, 2015 at 3:15 pm, Patrolman Charles Hayes of the Wellsville Police Department received a call from his dispatcher that an employee from Family Dollar in Wellsville reported a suspicious large white vehicle parked in the parking lot. Tr. 37-38. Officer Hayes responded to the call and arrived on the scene at 3:18 pm. Tr. 44. Patrolman Marsha Eisenhart and Lieutenant Ed Wilson arrived shortly thereafter as backup.

**{¶4}** Officer Hayes made contact with Appellee. As a result, it was discovered Appellee did not have a valid driver's license, he had a drug pipe on his person, and a mobile Methamphetamine lab was found in the vehicle.

**{¶5}** Appellee was indicted for R.C. 2935.041, possession of chemicals for drugs, a third-degree felony and R.C. 2925.11(A), possession of drugs, a fifth-degree felony. 8/12/15 Superseding Indictment.

**{¶6}** Appellee filed a motion to suppress arguing there was no reasonable suspicion based on articulable facts to conduct an investigatory stop and there was a lack of reasonable suspicion to detain Appellee.

**{¶7}** A hearing was held on September 29, 2015 and October 8, 2015. Thereafter, the trial court granted the motion to suppress. It found the state did not meet its burden of proving there was a reasonable suspicion that criminal activity was imminent, the "investigatory stop was not based on reasonable suspicion and therefore, any and all evidence obtained following the same is the fruit of an unconstitutional search and seizure." 10/16/15 J.E.

**{¶8}** The state appeals that decision.

### Assignment of Error

"The trial court erred in suppressing the evidence and holding that the investigatory stop of Defendant was not based on reasonable, articulable suspicion."

**{¶9}** Appellate review of a suppression decision presents a mixed question of law and fact. *State v. Roberts*, 110 Ohio St .3d 71, 2006–Ohio–3665, 850 N.E.2d 1168, ¶ 100. When considering a motion to suppress, the trial court assumes the role of trier of fact; it is in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). Therefore, a trial court's factual findings are afforded great deference which an appellate court will accept if they are supported by competent, credible evidence. *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982). The trial court's legal conclusions, however, are reviewed de novo. *State v. Burnside*, 100 Ohio St.3d 152, 2003–Ohio–5372, 797 N.E.2d 71, ¶ 8.

**{¶10}** In the motion to suppress, Appellee asserted his Fourth Amendment rights and argued, all evidence obtained from the stop must be suppressed.

**{¶11}** Both the Fourth and Fourteenth Amendments to the United States Constitution and Section 14, Article I of the Ohio Constitution protect citizens against unreasonable searches and seizures. *Delaware v. Prouse*, 44 U.S. 648, 662, 99 S.Ct. 1391 (1979); *State v. Robinette*, 80 Ohio St.3d 234, 238–39, 685 N.E.2d 762 (1997). There are three general categories of police-citizen contact for purposes of determining the protections afforded by the Fourth Amendment. *State v. Hall*, 1st Dist. No. C-150317, 2016-Ohio-783, ¶ 16. These categories include: (1) a consensual encounter; (2) an investigative detention, or "*Terry* stop"; and (3) a seizure that constitutes an arrest. *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319 (1983) (plurality opinion), cited in *State v. Mitchem*, 1st Dist. No. C–130351, 2014–

Ohio–2366, ¶ 17; *State v. Taylor*, 106 Ohio App.3d 741, 747–749, 667 N.E.2d 60 (2d Dist.1995).

**{¶12}** The state's first argument asserts the evidence shows there were two encounters. The first was a consensual encounter and did not require reasonable articulable suspicion of criminal activity. The second encounter was a detention with reasonable articulable suspicion of criminal activity. In support of its position it relies on Officer Hayes' testimony.

**{¶13}** Officer Hayes testified he arrived at the Family Dollar store two minutes after he received the dispatch call. Upon arriving, he saw Appellee seated in the driver's seat of a large white Lincoln, the car door was open, and his feet and legs were outside the vehicle; it looked like he was getting out of the car. Tr. 39. The officer made contact with Appellee, asked Appellee what he was doing and for his ID. Tr. 39. Appellee was cooperative and gave the officer his name and social security number; he did not have any kind of license or other ID. Tr. 40. The officer then ran Appellee's social security number. Tr. 40.

**{¶14}** Officer Hayes testified two other officers, Officer Eisenhart and Lieutenant Wilson arrived at the scene around the time he was running Appellee's social security number. Tr. 61.

**{¶15}** The information on Appellee was taking a while to obtain, so according to Officer Hayes, the officers were going to permit Appellee to leave. Appellee got into his vehicle and started it. It was then that information came back from dispatch that Appellee did not have a valid license and there was an active warrant for his arrest out of Illinois. Officer Hayes moved his vehicle in front of Appellee's vehicle to prevent him from leaving.

**{¶16}** The officer testified it is common procedure for the vehicle to be inventoried and towed when the driver does not have a license. Appellee was placed into the backseat of Patrolman Eisenhart's vehicle for safe keeping. Prior to being placed in the cruiser, Appellee was patted down and a drug pipe was found on his person. The officer was going to write Appellee a ticket for driving without a license and drug paraphernalia. While writing the ticket, the Officer looked through the driver side windshield and noticed a green bottle with a white substance in it. The canine unit was called and items used for a mobile Methamphetamine lab were found.

**{¶17}** This version of events may support the conclusion there were two encounters. The first encounter could be considered a consensual encounter, and thus, not protected by the Fourth Amendment. *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382 (1991). During a consensual encounter, an officer is permitted to request identifying information from the individual; however, the individual can disregard the question and walk away. *United States v. Mendenhall*, 446 U.S. 544, 555–556, 100 S.Ct. 1870 (1980). The second encounter could be considered a *Terry* stop because Appellee did not have a valid license, a minor misdemeanor, and was going to be cited for such violation; there was a reasonable suspicion of criminal activity for his detention. *State v. Bradford*, 10th Dist. No. 14AP-322, 2014-Ohio-5527, ¶ 23, citing *Knowles v. Iowa*, 525 U.S. 113, 117, 119 S.Ct. 484 (1998) (concluding that the detention of a person to be issued a citation does not amount to a full custodial arrest, but is "more analogous to a so-called '*Terry* stop'").

**{¶18}** However, Officer Hayes testimony regarding the two encounters is not supported by testimony from Officer Eisenhart, who acted as backup that afternoon. Officer Eisenhart's testimony provides support for the conclusion there was only one encounter. Officer Eisenhart testified she and Lieutenant Wilson heard on the radio that Officer Hayes was going to respond to a suspicious vehicle at Family Dollar. Tr. 8. They went to the scene for back up. Tr. 8. She indicated they arrived within two minutes of becoming aware of the situation. Tr. 8.

**{¶19}** As aforementioned, Officer Hayes testified he arrived at the scene at 3:18, about two minutes after being dispatched. Officer Eisenhart and Lieutenant Wilson arrived on the scene shortly after Officer Hayes. However, Officer Eisenhart's testimony does not provide any indication she saw Appellee get in his car and start it. Her testimony indicates Appellee was out of his car, she was told he did not have a valid license, and he was placed in her car. Tr. 8-12, 17-18.

**{¶20}** That testimony contradicts Officer Hayes' testimony. He stated the other officers, Officer Eisenhart and Lieutenant Wilson, would have seen Appellee get in his car and start it. Tr. 61-62. Furthermore, Officer Hayes acknowledged the police report did not indicate information on the second encounter:

Q. As far as – and none of that is in your report either; right? Would you agree? There's nothing in there about a second approach, him getting in his car, starting the car?

I don't believe so, no.

Tr. 61.

{¶21} During the suppression hearing, Appellee's counsel argued there was not two encounters and referenced the conflicting evidence. In his final argument he stated:

There's – it's amazing to me the conflicting testimony from all these police witnesses and nobody else has said he got back into the car and saw him driving. * * * And if you remember from the first hearing the officer stated, both of them stated – or I apologize, not both of them because the dog came much later. The female officer's name escapes me, was there within two minutes of the call. She said she heard it. She was there. He was detained. He was detained the entire time. There was no testimony that he was ever out of handcuffs. He was in handcuffs the entire time that she was there. As she stated it was within two minutes of the phone call, of hearing about it, and coming from backup.

* * *

And I think with the conflicting stories, they hurt the credibility of the State and how this went down. I mean you have two officers that state different things and said they were – there was only a difference of two minutes between them. You know and to say that we were just going to let – we didn't have any information and we were just going to let him go. And then it came a minute later that contradicts everything else that has been said in the prior day that we were here. It just doesn't make any sense.

Tr. 67-70.

{¶22} In considering all the evidence, the trial court laid out the sequence of events for that afternoon as follows:

The Officer testified that he was dispatched around 3:15 P.M. to Family Dollar in Wellsville after an employee of that store reported a suspicious vehicle in the parking lot. The Officer testified he observed the Defendant and the vehicle, both of which matched the descriptions he was given by the dispatch officer. The driver door of the vehicle was open and the Defendant was sitting in the driver's seat with his legs turned towards the open driver's door. The Officer asked the Defendant for identification and proceeded to run the Defendant's record. The Officer testified that he learned the Defendant did not have a valid driver's license, had a warrant, and an extensive criminal background.

While the Officer waited on information about the warrant from the Sheriff's Office, the Officer summoned a tow truck to tow the vehicle because the Defendant lacked a valid driver's license. The Officer proceeded to take an inventory of the vehicle prior to towing. While preparing the citation during the inventory, the Officer noticed a suspicious bottle in plain view on the floor of the car. The bottle contained illegal substances, which counsel for the Defendant is seeking to have suppressed.

* * *

In this case the dispatcher relayed information received from a Family Dollar employee that the Defendant and vehicle appeared suspicious. There was no additional information that explained why the Defendant and the vehicle appeared to be suspicious. Upon arrival, the Officer testified that the Defendant was sitting in the vehicle, but did not note any observations that would have caused suspicion. The Officer specifically stated the Defendant did not smell of alcohol, did not use

slurred speech, and did not cause any altercations. In fact, the Officer testified that the Defendant was very cooperative.

There is a difference between an investigatory stop and a consensual police-citizen encounter. A consensual police-citizen encounter does not rise to the level of an investigatory stop and does not require reasonable suspicion of imminent criminal activity. The Seventh District held that reasonable suspicion was not needed to ask the Defendant his name and to run his information when the stop was a consensual police encounter, which does not rise to the level of an investigatory stop.

This case is distinguished from the Seventh District case, *State v. Thorton* [sic].[1] In *Thorton* [sic], while responding to a call at 2:00 A.M., an officer observed two persons walking on the sidewalk who appeared to be heading to a known drug house. The officer stopped the individuals and asked for their names. The officer quickly left the individuals and continued to respond to the call. An hour later, the officer drove past the same area and saw one of the individuals exit the known drug house. The officer then used the previously learned information and ran the individual's name, which revealed a warrant. The Court held reasonable suspicion was not required because the contact was a consensual police-citizen encounter, rather than an investigatory stop. In *Thorton* [sic], the officer merely crossed paths with the individuals while responding to a call from dispatch. Here, the Officer encountered the Defendant after being specifically lead to the Defendant by the dispatch officer.

10/16/15 J.E.

{¶23} As previously stated, in deciding a suppression motion, the trial court assumes the role of trier of fact and is in the best position to resolve factual questions and evaluate the credibility of witnesses. *Mills*, 62 Ohio St.3d at 366. Consequently,

---

[1] Case name is *Thornton*, not Thorton.

a trial court's factual findings are afforded great deference; an appellate court will accept them if they are supported by competent, credible evidence. *Fanning*, 1 Ohio St.3d 19. Here, the trial court's findings of fact do not reference two encounters; it believed there was one encounter. As the above referenced testimony demonstrates, there is competent credible evidence to support the conclusion there was only one encounter. Accordingly, the trial court's factual findings are afforded great deference and we accept its findings.

**{¶24}** That acceptance, however, does not mean the trial court's suppression ruling is automatically affirmed. Although the trial court found only one encounter, the encounter could have started as consensual and legitimately turned into an investigatory stop supported by a reasonable articulable suspicion of criminal activity.

**{¶25}** As previously explained, during a consensual encounter an officer is permitted to ask questions and the individual is permitted to disregard those questions and walk away. *Mendenhall*, 446 U.S. at 555–556. A consensual encounter remains consensual even if police officers ask questions, ask to see the person's identification, or ask to search the person's belongings, provided "the police do not convey a message that compliance with their requests is required." *Bostick*, 501 U.S. at 435; *Florida v. Rodriguez*, 469 U.S. 1, 4–6, 105 S.Ct. 308 (1984); *Immigration & Naturalization Serv. v. Delgado*, 466 U.S. 210, 216, 104 S.Ct. 1758 (1984). Encounters that involve "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled" are all examples of circumstances where consensual encounters may become seizures. *Mendenhall* at 554–555.

**{¶26}** Consensual encounters can legitimately turn into investigatory stops once a reasonable articulable suspicion of criminal activity presents itself. *State v. Starcher*, 7th Dist. No. 13 JE 1, 2013-Ohio-5533, ¶ 24, citing *State v. Rappley*, 2d Dist. No. 11–CR–2693, 2013–Ohio–964, ¶ 20–31. *See also State v. Rackow*, 9th Dist. No. 06–CA–0066, 2008–Ohio–507, ¶ 10 ("A consensual encounter can quickly turn into a seizure of the person, requiring at least a reasonable, articulable suspicion of criminal activity."). The slide from a consensual encounter into an investigatory

stop is evaluated under the totality of the circumstances. *State v. Thornton*, 7th Dist. No. 14 CO 19, 2014-Ohio-4011, ¶ 21.

**{¶27}** The Second Appellate District has found there was no Fourth Amendment violation when an officer obtained identifying information during consensual encounter and that information leads the officer to discover an active warrant. *State v. Aufrance*, 2d Dist. No. 21870, 2007-Ohio-2415, ¶ 15-57.

**{¶28}** The trial court cites our *Thornton* case to distinguish this case and explain why the encounter did not start out as a consensual encounter and then legitimately become a *Terry* stop. In *Thornton,* there was a lapse of time between the two encounters. *Thornton*, 2014-Ohio-4011, ¶ 22-34. It was not the time lapse that made the first encounter consensual and the second encounter a *Terry* stop. Rather, it was the ability of the persons to be able to leave and the lack of display of police force that rendered the first encounter consensual. The officer asked the individuals their names while they were on the street and he was seated in his police vehicle with the window down. *Id.* at ¶ 22-23. The individuals left after answering the question. *Id.* The reasonable articulable suspicion of criminal activity arose an hour later when the officer saw Thornton leave a known drug house, and after the officer had the name he was given searched and it was discovered that there was an active warrant for that name. *Id.* at ¶ 30-32.

**{¶29}** Considering the facts in *Thornton* and the deference to the trial court's credibility determinations, we agree with the trial court that the encounter in this instance is different from the encounter in *Thornton* and was an investigatory encounter from the beginning. As the trial court noted in its judgment, here, the officers were being led to Appellee by the dispatch officer. In *Thornton*, the officer merely crossed paths with the individuals. Furthermore, in *Thornton* there was only one officer. In this situation there were three officers and two patrol cars on the scene. Two of the officers were there as backup. In *Thornton*, the officer did not leave his vehicle; he asked questions while seated in vehicle. This did not constitute a show of force. Here, the officer was outside of his vehicle and two other officers were standing in the background. Furthermore, statements made by Officer Hayes during his testimony indicated Appellee was not free to leave; he would not have permitted Appellee to leave without giving his identifying information:

Q. So you were planning on – you said you got a report of a suspicious vehicle. So despite not having any information on him you're saying you were going to just let him go, Mr. Warner go, and then the information came across?

I had no reason to hold him at that point.

* * *

Q. So she [Officer Eisenhart] wouldn't have necessarily seen him behind the wheel there at the Family Dollar store; it that right?

I can't speak for her, I would think that somebody would have seen him when we tried to – when we were going to let him go and let him leave.

Tr. 60, 64.

{¶30} Use of the language "let him go" and "no reason to hold him beyond that point" implies Appellee was not free to go. If the encounter was truly consensual, then at any point Appellee could have left.

{¶31} Given the trial court's conclusion and distinguishing this case from *Thornton*, the trial court believed Appellee was not free to leave and the encounter did not start out consensual. The facts stated by the trial court and the testimony support such a conclusion.

{¶32} We must now determine if there was a reasonable, articulable suspicion to support the *Terry* stop.

{¶33} An investigative detention or *Terry* stop is less intrusive than a formal arrest, but more intrusive than a consensual encounter. *Hall*, 2016-Ohio-783, at ¶ 17, citing *Taylor*, 106 Ohio App.3d at 748. Generally, an investigatory detention is reasonable and, thus, passes constitutional muster, when the officer performing the investigatory detention has a reasonable, articulable suspicion of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868 (1968). "Reasonable articulable suspicion exists when there are 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion.'" *State v. Stephenson*, 3d Dist. No. 14–04–08, 2004–Ohio–5102, ¶ 16, quoting *State v. Bobo*,

37 Ohio St.3d 177, 178, 524 N.E.2d 489 (1988). "Both the content of information possessed by police and its degree of reliability" are pertinent when determining whether there is a reasonable suspicion of criminal activity to justify a stop. *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412 (1990). The Ohio Supreme Court has held:

> Where an officer making an investigative stop relies solely upon a dispatch, the state must demonstrate at a suppression hearing that the facts precipitating the dispatch justified a reasonable suspicion of criminal activity.
>
> A telephone tip can, by itself, create reasonable suspicion justifying an investigatory stop where the tip has sufficient indicia of reliability.

*City of Maumee v. Weisner*, 87 Ohio St.3d 295, 720 N.E.2d 507 (1999), paragraphs one and two of the syllabus.

{¶34} The determination of whether an officer has a reasonable suspicion of criminal activity involves a consideration of "the totality of the circumstances." *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690 (1981). Limited in both duration and purpose, the investigative detention may last only as long as it reasonably takes a police officer to confirm or dispel suspicion of criminal activity. *Terry*.

{¶35} Here, Officer Hayes testified that dispatch told him a Family Dollar employee called and there was a suspicious vehicle, a white either Lincoln or Cadillac, in the parking lot with a "subject" in it. Tr. 65. Officer Hayes indicated the employee was concerned because the vehicle had been there awhile. Tr. 38. No testimony indicated this was a high crime area or there was anything else suspicious about this vehicle or Appellee. During the trial court's questioning of Officer Hayes, he admitted that merely sitting in a car for a while is not suspicious activity, in and of itself:

> The Court: Officer, let me ask you this. Let's assume, I drive a little larger car, and I drive into Wellsville and I haven't been there before and I go to the Dairy Queen and pull out my cell phone and make a couple calls, maybe go in and get a cheeseburger and eat it in my car

and drink a coke, make a couple more calls. Now to this point am I under suspicion? I'm driving a car that nobody had seen before, it's larger, and I have been in the Dairy Queen parking lot for awhile. Does that make me suspicious?

Officer Hayes: No, but if somebody calls and I go check it out.

Tr. 64-65.

**{¶36}** Consequently, the call does not by itself establish a reasonable, articulable suspicion of criminal activity. *See State v. Anderson*, 11th Dist. No.2003–G–2540, 2004–Ohio–3192, ¶ 13 (anonymous tip of a suspicious vehicle, absent any observation of criminal activity, does not support a reasonable suspicion of criminal activity); *City of Bowling Green v. Tomor*, 6th Dist. No. WD–02–012, 2002–Ohio–6366, ¶ 11 (anonymous tip of a suspicious vehicle coupled with the time of night and an officer's knowledge of break-ins in the neighborhood does not rise to the level of reasonable suspicion). Furthermore, Officer Hayes did not testify his initial observation of the vehicle presented any reasonable suspicion of criminal activity.

**{¶37}** Therefore, since the encounter was a *Terry* stop from the beginning and there was no reasonable, articulable suspicion of criminal activity, the trial court's ruling is affirmed. The sole assignment of error lacks merit.

Donofrio, P.J., concurs.

DeGenaro, J., concurs.